BELL
*v.*
BOUNEY.

THOMPSON G. BIRD *v.* S. G. LAYCOCK,
S. G. LAYCOCK *v.* THOMPSON G. BIRD,
ADELIA BIRD, wife of S. G. Laycock, *v.* Thompson G. Bird.

The district court refused to homologate an award, and referred it back to the arbitrators. *Held :* The judgment is not final, and there can be no appeal.

The court will not set aside an award, upon the allegation, that the amicable compounders misconstrued the deposition of a witness, particularly where the party opposing the award had submitted the deposition, for it was his fault, that he did not obtain more explicit testimony from the witness. Nor will the award be interfered with, on the ground that one of the compounders had in his possession vouchers which would have benefitted the party opposing the award, where those vouchers had been received by the referree, . in the course of his business, before the submission ; for a party cannot complain, that the referees did not act upon testimony not submitted to them.

APPEAL from the District Court of East Baton Rouge, *Burk,* J. *Cyrus Ratliff,* for *Thompson G. Bird. George S. Lacy,* for *Laycock et al.*

On a motion to dismiss appeal :

PRESTON, J. These three suits were referred to amicable compounders, and all matters in controversy between the parties.

They made their award on 14th of July, 1851. On the 15th, *Thompson G. Bird* filed a petition against *Laycock* and wife, praying that the award might be homologated, and made the judgment of the court. *Laycock* and wife made opposition to it on several grounds. Although ten days may have elapsed after notice to them to oppose the award, they were still in time, as it had not, in point of fact, been closed by judgment. The arbitrators themselves also applied to the court, to refer the award back to them, because some vouchers in their possession, at the time it was made, had been overlooked. The court refused to homologate the award, but referred it back to the arbitrators. *Thompson G. Bird* has appealed.

He cannot do so, the judgment is not final ; indeed there is no judgment.

Even if we err in this view of the case, we think there was sufficient reason to refer the award back to the arbitrators. Their award was under the control of the court, not to alter or amend it, to be sure, more than the verdict of a jury, but to grant a revision of it for any good and legal cause.

We think with the district court, that such cause existed.

The appeal is dismissed at the cost of the appellant.

This case was afterwards tried on its merits. By the court :

SLIDELL, J. These parties, having been engaged in litigation with each other, referred all the matters in controversy between them, to *D. D. Avery* and *William S. Pike,* as amicable compounders. After many sittings, at which the parties and their counsel were present, and after hearing oral and written

evidence, the arbitrators finally returned their award, in favor of *Bird*, for the sum of $5169, with eight per cent interest, from July 22d, 1851.

Upon a rule taken upon *Laycock* and wife, to show cause why the award should not be homologated and rendered executory, they opposed the rule upon grounds which are also urged by their counsel here. One of them is, in substance, that the arbitrators misconstrued the evidence of *Davidson*, whose testimony was submitted, by *Laycock* and wife, in the form of a deposition. Another was, that at the time of the hearing by the arbitrators and of making the award, *Pike*, one of the arbitrators, had in his possession certain vouchers, which, if they had been brought forward, would have established a further credit in favor of the respondents against *Bird*.

Under the facts disclosed at the trial of the rule, it is questionable whether it would have been consistent with the usual rules of practice, to open the award, even if it had not been rendered by amicable compounders. For if the deposition of *Davidson* was obscure, as seems to have been the case, it was the fault of the respondents that they did not use due diligence, and obtain further and more explicit testimony from him. We infer from the opinion of the district judge, that he thought there was remissness, in this respect, on the part of the respondents; and it was not upon this ground, that he ordered the award to be set aside. It is also proper to observe, that a new deposition of *Davidson*, which the respondents offered at the hearing of the rule, to support the suggestion that the arbitrators had misconstrued his testimony, is, itself, loose and indefinite. As to the vouchers, it appears, from the evidence offered at the trial of the rule, that vouchers did exist for two small sums, amounting to $138 paid for costs by *Pike*. But it is not pretended those vouchers were offered in evidence before the arbitrators. They seem to have come into the possession of *Pike*, not as arbitrator, but in the course of some anterior business relation in which he acted for the respondents. The respondents should not be permitted to complain, that the arbitrators did not act on vouchers which were never produced in evidence before them, and of the existence of which at all, one of the arbitrators seems to have been entirely ignorant, while the other's knowledge of their existence was unofficial.

Viewed therefore as a case of ordinary arbitration, it would be quite questionable, whether an award prepared after abundant opportunities to produce evidence; after ample discussion by parties and their counsel; and after mature deliberation by the arbitrators, should be set aside on the lame showing made by the respondents. But at all events, it is quite clear, that an award of amicable compounders ought not to be disturbed under such circumstances. This, we think, clearly results from the provisions of our codes on the subject of amicable compounders, and the decided cases.

Our Civil Code, under the title of arbitration, recognizes two classes of arbitrators : " the arbitrators properly so called," and " the amicable compounders." Art. 3076. The following article defines the difference between them, as to the principles by which they are to be guided in the discharge of their duty. "The arbitrators, says article 3077, ought to determine, as judges, agreeably to the strictness of the law. Amicable compounders are authorized to abate something of the strictness of the law in favor of natural equity. Sont autorises à suévie l'equiti naturelle."

Such being the authority of amicable compounders, they are to be considered as in a peculiar degree, mediators of peace. When, therefore, parties embroiled

in litigation, become alarmed at the prospect of its expense, its delays, its many perplexing, wearisome and irritating incidents, and seek among their friends judges of their own choice, and clothe them with the authority of amicable compounders, they are considered, to use the simple and expressive language of Domat, as saying to such arbitrators, that each party is willing to abate something of what they hope for in justice, and, for the love of peace, to forego a part of their interests; that they prefer the considerations of peace and quiet, to the rigor of justice, which might leave still occasions of strife and contention.

But while our law regards with favor this mode of terminating differences, it takes care that the object for which the submission is made, shall not be defeated, when the spirit of forbearance and peace which elicited the submission to amicable compounders, has been ruffled in the breast of either party by an adverse award. Therefore, the lawgiver has made a wide distinction between ordinary arbitrators and amicable compounders. "As regards the award of arbitrators, the court may rectify the errors they contain, even though the parties had agreed that such award should be made the judgment of the court, unless the same have been rendered by amicable compounders."

"But if, from the submission entered into by the parties, it appears that they intended to give the arbitrators power to act as amicable compounders, the court cannot revise the award. It must be homologated as it stands, in order that it may have the effect of a definitive judgment." Code of Practice, articles 459, 460.

These articles have been repeatedly the subject of judicial comment. In *Davis v. Leeds*, which appears to have been elaborately argued, Mathews, J., remarks: "The submission in the present case, clearly contains a grant of power to the arbitrators to act as amicable compounders, and, consequently, deprives the tribunals of the country of all authority to revise the award rendered in pursuance of it. Whatever has been done in relation to the matters actually referred to their decision, if done honestly, must remain without the possibility of revision; and as a necessary consequence, without alteration or amendment. Acts done by such arbitrators, having no just relation to the matters in dispute submitted, would be absolutely void, and gross misconduct on their part, exhibiting a want of due respect to common and well established rules in regard to right and wrong, or extreme partiality in their award, would be good causes for setting it aside entirely, if proven to the court, on opposition to its homologation. But nothing of this kind is either alleged or proven in the present instance. The whole of the grounds assumed, in the numerous points presented by the counsel of the defendant, relate to want of precision in the manner in which the cause was laid before the arbitrators, and errors in their award arising from a mistaken view of the facts of the case. If parties will submit their disputes to be decided by men, chosen by themselves as judges, under the appellation of amicable compounders, they must abide their judgments, without hopes of having them revised by the courts of justice established by the Constitution and laws of the State. Such judges are not required to determine according to the strictness of the law. They are authorized to abate something of the strictness in favor of natural equity. L. Code, art. 3077."

So in *Canty v. Beal*, the award of amicable compounders was attacked as being grossly erroneous, but not for fraud or misconduct on the part of the referrees. Morphy, J., cites, with approbation, the opinion in *Davis v. Leeds*,

BIRD
*v.*
LAYCOCK.

and adds: "As to any errors alleged to have been committed in this award, even were they as obvious as represented by the appellant, (which, from an inspection of the record, we are by no means prepared to admit) we do not feel ourselves authorized to inquire into them. Whatever has been honestly done, in relation to the matters actually referred to, the decision of the amicable compounders cannot be revised or altered by a court of justice. Code of Practice, art. 459 and 460. L. Code, art. 3077, 3096.

Indeed, the doctrine above enunciated, is as ancient as the Partidas. "La otra manera de jueces de avenencia es á que llaman en latin arbitratores, que quiere tanto decir como alvedriadores et comunales amigos que son escogidos por placer de amas las partes para avenir et librar las contiendas que hobieren entre sí en qualquier manera que ellos tovieren por bien: et estos atales despues que fueren escogidos et hobieren rescebidos los pleytos et las contiendas desta guisa en su mano, han poder de oir las razones de amas las partes, et de avenirlas en qual manera quisieren. Et maguer non ficiesen ante sí comenzar los pleytos por demanda et por respuesta, et non catasen aquellas cosas que los otros jueces son tenudos de guardar, con todo eso valdrie el juicio ó la avenencia que ellos ficieren entre amas las partes, solo que sea fecho á bona fe et sin engaño. Partida 3, tit. 3, lex 23.

In conclusion, we think with the appellant's counsel, that if such excuses as are presented in this case, against the award of amicable compounders were recognized by courts, it would cease to be that salutary method of putting an end to litigation, which the law contemplates and favors. Compromissum ad finiendas lites pertinet interest reipublicæ ut sit finis litium.

It is therefore decreed, that the judgment of the district court be reversed. And it is further decreed, that the award of the arbitrators be homologated and made executory, so that the said *Thompson G. Bird* do recover from the said *Adelia Bird*, wife of *S. G. Laycock*, the sum of $5169, with eight per cent interest per annum, from the 22d day of July, 1851, and the costs of this appeal, and of the collection of said sum and interest by execution. And it is further decreed, that the costs that had accrued in these above entitled suits, from the 12th March 1850, and in the homologation of the award, including the sum of $300, the compensation of the arbitrators fixed by consent of parties, be paid in equal proportions by said parties, to wit: one half by said *Thompson G. Bird*, and one half by said *Adelia Laycock* and *S. G. Laycock*, her husband.