## CAMPBELL *v.* CAMPBELL.

### Arbitration and Award; Discontinuance.

1. Conflicting authorities cited upon the question whether the submission of matters in litigation to arbitration by the parties, although no award is made, operates *ipso facto* to discontinue the suit.

2. Where during the pendency of a suit the parties agree to submit their differences to arbitration, and provide that upon the return of an award and compliance therewith by the debtor party the pending suit shall be dismissed, an award under such submission and compliance with its terms by the party against whom the award is made operate as a discontinuance of the suit. (Citing *Bailey* v. *District of Columbia,* 4 App. D. C. 356.)

Note.—On arbitration agreements, their validity and binding force and effect, see note in 47 L.R.A. (N.S.) 337.

3. It is the policy of the law to uphold agreements having for their object the termination of litigation by arbitration.

4. Where parties to a pending suit submit their differences to arbitration, and an award is made, the award cannot be attacked in such suit, as its effect is to discontinue the suit, but the unsuccessful party may attack the award in an independent suit for fraud, or on the ground that it is not responsive to the terms of the submission.

No. 2804.   Submitted October 12, 1915.   Decided November 29, 1915.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia, sitting as an equity court, in a suit for an accounting and for the enforcement of a settlement agreement between the parties.            *Reversed.*

The COURT in the opinion stated the facts as follows:

Differences arising out of a copartnership between James W. Campbell and Charles M. Campbell, brothers, led to the filing of the original bill in this case in the supreme court of the District of Columbia on September 5, 1905, by James W. Campbell, hereafter referred to as plaintiff, against his brother for an accounting and for the enforcement of a certain settlement agreement embracing various of their affairs made by them on September 6, 1902.

Shortly after the institution of the present suit, the parties entered into a written agreement to submit all their differences to arbitration, and selected their brother, William A. Campbell, and his son, Fred S. Campbell, as arbitrators, they to select a third arbitrator.   On January 3, 1908, the parties entered into a further agreement wherein it was stipulated that the arbitration should be conducted by the brother and nephew without a third arbitrator, and if they should agree their award should be final, but in the event they could not agree the arbitration should proceed under the original agreement.   Full hearing was had, and the two arbitrators reached an agreement and signed an award September 3, 1908.

On November 8, 1909, plaintiff, with leave of court, filed an

amended and supplemental bill seeking relief additional to that prayed in the original bill. To this defendant answered, setting up as a defense in bar to further proceedings in the present case the arbitration agreement and award. On May 2, 1910, plaintiff filed an amendment to the amended and supplemental bill, assailing the validity of the award, and praying that the award "be set aside and declared to be null and void and of no effect." After much delay and undue technical procedure, issue was joined and a large amount of testimony taken, which, on submission to the court, resulted in a decree on December 15, 1911, vacating the award, and a further decree on October 8, 1912, sustaining the agreement of September 6, 1902, with a reference of the cause to the auditor to state accounts between plaintiff and defendant, basing the statement on said agreement.

In December following, defendant filed a supplemental answer, alleging that on February 16, 1909, plaintiff filed in the court of common pleas in Guernsey county, Ohio, a petition praying for judgment upon two notes, and recovered an *ex parte* judgment thereon; and that, thereafter, defendant filed in said cause his petition, setting up the arbitration agreement and award pleaded herein as a bar to recovery on said notes and as a complete release and discharge of any liability thereunder. Plaintiff, by appropriate pleading, set up the invalidity of the award on substantially the same grounds which have been averred in the various amendments to the bill in this cause. Upon the issues joined, proof was taken and a judgment was entered by the common pleas court of Ohio sustaining the award, adjudging it to be valid and operative, and thereby the notes sued upon had been fully satisfied and released and belonged to defendant. From said judgment, plaintiff appealed to the circuit court of Ohio, where the judgment was affirmed. Appeal was then taken to the supreme court of Ohio, where the judgment was again affirmed. The court below refused to recognize the Ohio judgment, and entered a decree for plaintiff in the sum of $149,746, and for other relief prayed in the original bill and the numerous amendments thereto. From this decree, the case was appealed to this court.

*Mr. John Ridoul* and *Mr. E. H. Thomas* for the appellants, in their brief cited:

2 Am. & Eng. Enc. Law, 794; *Babcock* v. *School Dist.* 25 Vt. 250; Bacon, Abr. Title Arbitrament & Award (K) p. 362; *Bailey* v. *D. C.* 9 App. D. C. 360, 372, 373; *Brymer* v. *Clark,* 20 Ohio St. 231; *Bird* v. *Laycock,* 7 La. Ann. 171; *Bissell* v. *Spring Valley Twp.* 124 U. S. 225, 230, 234; *Bowen* v. *Lazalere,* 44 Mo. 383; *Briscoe* v. *Macfarland,* 32 App. D. C. 167; *Brown* v. *R. Co.* 58 S. C. 466, 468; *Burchell* v. *Marsh,* 17 How. 344, 349, 351; *Camp* v. *Root,* 18 Johns. 22; *Canfield* v. *Walertown F. Ins. Co.* 55 Wis. 419; Const. Art. 4, Sec. 1; *Crooker* v. *Buck,* 41 Me. 355; *Cromwell* v. *Sac County,* 94 U. S. 351, 352; *Cunningham* v. *Craig,* 53 Ill. 252; *Davis* v. *Atlas Assur. Co.* 16 Wash. 232; *District of Columbia* v. *Brewer,* 32 App. D. C. 388, 391; *District of Columbia* v. *Bailey,* 171 U. S. 161, 171; *Draghicevich* v. *Vulicevich,* 76 Cal. 378; *Duvall* v. *Sulzner,* 155 Fed. 910; Enc. Pl. & Pr. 957, 958; *Eddings* v. *Gillespie,* 12 Heisk. 548; *Ex parte Wright,* 6 Cow. 399; *Ferson* v. *Drew,* 19 Wis. 225; *German Amer. Ins. Co.* v. *Johnson,* 4 Kan. App. 359; Hammon, Contr. Sec. 479; *Hine* v. *Morse,* 218 U. S. 493; *Hyatt* v. *Wolfe,* 22 Mo. App. 191, 201; *Ins. Co.* v. *Bailey,* 13 Wall. 616; *Jewell* v. *Blankenship,* 10 Yerg. 439; *Johnson* v. *Ins. Co.* 69 Mo. App. 231; Judicial Code; *Larkins* v. *Robbins,* 2 Wend. 505; Lindley, Partn. Secs. 15, 16, 512; *Lockwood* v. *Thorne,* 18 N. Y. 286; *Lord* v. *Veazie,* 8 How. 255; Louisiana Civil Code, Arts. 3076, 3077; *McCahan* v. *Reamey,* 33 Pa. 535; *McNulty* v. *Salley,* 95 N. Y. 242, 244; *Maher* v. *Home Ins. Co.* 75 App. Div. 226; *Mooers* v. *Allen,* 35 Me. 276; *Moore* v. *Galupo,* 65 N. J. Eq. 194; *Munroe* v. *Alaire,* 2 Caines, 320; *Nalle* v. *Oyster,* 230 U. S. 165, 36 App. D. C. 36–41; Ohio Code provisions; Ohio Code, Sections 11238, 11302–3, 11305–6–6–8, 1134–15, 11326, 11328–9; *People* v. *Onondaga Common Pleas,* 1 Wend. 314; *Perkins* v. *Tyrer,* 24 App. D. C. 447; *Phœnix Ins. Co.* v. *Romeis,* 15 Ohio C. C. 691; *Pierce* v. *Parker,* 4 Met. 80; 2 Pom. Eq. Sec. 855; *Purdy* v. *Delevan,* 1 Caines, 304; *R. Co.* v. *Gorman,* 7 App. D. C. 91; *Rand* v. *Redinglon,*

13 N. H. 172; *Reed* v. *Tarbell,* 4 Met. 93; *Reeve* v. *Mitchell,* 15 Ill. 297; *Re Garcelon,* 104 Cal. 570; *Rixford* v. *Nye,* 20 Vt. 132; *Rolland* v. *Cassidy,* 57 L. J. P. C. N. S. 100, L. R. 13 App. Cas. 770; U. S. Rev. Stat. Sec. 905; *Sanborn* v. *Maxwell,* 18 App. D. C. 245, 252; *Schawhan* v. *Baker,* 167 Mo. App. 25, 33; *Seaman* v. *Seaman,* 12 Wend. 381; *Sears* v. *Grand Lodge,* 163 N. Y. 374; *Smith* v. *Barber,* 2 Hill, 387; *Smith* v. *Smith,* 36 Ga. 184; *Slack* v. *Perrine,* 9 App. D. C. 128, 153; *Smith* v. *Barber,* 2 Hill, 387; *Southern P. R. Co.* v. *U. S.* 168 U. S. 1; *Sullivan* v. *Traders' Ins. Co.* 169 N. Y. 213; Taylor, Land. & T. 7th ed. Sec. 38; *Thompson* v. *Thompson,* 35 App. D. C. 14, 17; *Todd* v. *Macfarland,* 20 App. D. C. 176, 182, 183; *Town* v. *Wilcox,* 12 Wend. 503; *Utermehle* v. *Norment,* 22 App. D. C. 31; *Van Slyke* v. *Lettice,* 6 Hill, 610; *Vigel* v. *Hopp,* 104 U. S. 441; *Wells* v. *Lain,* 15 Wend. 99, 105; *Werlein* v. *N. O.* 177 U. S. 390; *West* v. *Stanley,* 1 Hill, 69; *Wisconsin Travelers' Ins. Co.* v. *Price Engine Co.* 141 Wis. 103.

*Mr. Wm. Henry White* for the appellee, in his brief cited:

*Allis* v. *Stowell,* 85 Fed. 481; *Avery* v. *U. S.* 12 Wall. 304; *Bailey* v. *D. C.* 4 App. D. C. 366; *Bowen* v. *Lazalere,* 44 Mo. 383; *Broderick's Will,* 21 Wall. 512; *Bronson* v. *Schulten,* 104 U. S. 410; *Buckles* v. *R. Co.* 53 Fed. 566; *Buel* v. *Dewey,* 22 How. Pr. 342; *Burlen* v. *Shannon,* 99 Mass. 200; *Callanan* v. *Port Huron etc. R. Co.* 61 Mich. 15; *Campbell* v. *Campbell* (Ohio Court opinion); *Carnochan* v. *Christie,* 11 Wheat. 466; *Clark* v. *Blair,* 14 Fed. 812; *Cox* v. *Giddings,* 9 Tex. 44; *Cramer* v. *Moore,* 36 Ohio St. 348; *Crocket* v. *Beaty,* 7 Humph. 66; *Cromwell* v. *Sac County,* 94 U. S. 351; *Culver* v. *Ashley,* 17 Pick. 98; *De Groot* v. *U. S.* 5 Wall. 430; *Deposit Bank* v. *Frankfort,* 191 U. S. 517; *Dinsmore* v. *Hanson,* 48 N. H. 413; *Elmendorf* v. *Harris,* 23 Wend. 628; *Embry* v. *Palmer,* 107 U. S. 3; *Ensign* v. *St. L. & S. F. R. Co.* 62 How. Pr. 123; *Fielding* v. *Westermeier,* 20 La. Ann. 51; *Flower* v. *O'Conner,* 7 La. 198; *Forgay* v. *Conrad,* 6 How. 203; Foster, Fed. Pr. Sec. 350; *Garfield Mem. Hospital* v. *Macfarland,* 31 App. D.

C. 447; *Gibson* v. *McNeely,* 11 Ohio St. 133; *Glenn* v. *Lucas,* 85 Fed. 550; *Godfrey* v. *Roessle,* 5 App. D. C. 299; *Hearne* v. *Browne,* 67 Me. 158; *Henry* v. *Porter,* 29 Ala. 619; *Hicks* v. *Otto,* 85 Fed. 728; *Holker* v. *Parker,* 7 Cranch. 436; *Huntington* v. *Laidley,* 176 U. S. 668; *Hyatt* v. *Wolfe,* 22 Mo. App. 191; *Jacoby* v. *Johnston,* 1 Hun, 242; *Klever* v. *Seawall,* 65 Fed. 376; *Laflin* v. *Chicago, etc. R. Co.* 34 Fed. 859; *Larkin* v. *Robbins,* 2 Wend. 505; *Lary* v. *Goodnow,* 48 N. H. 170; *L. ed. Sup. Ct. U. S. p.* 1059; *Laws* v. *Davenport,* 34 App. D. C. 505; *Lea* v. *Lea,* 99 Mass. 493; *Lewisburg Bank* v. *Sheffey,* 140 U. S. 450; *Lincoln* v. *Whittenton Mills,* 12 Met. 31; *Lockwood* v. *Wildman,* 13 Ohio St. 451; *Lore* v. *Truman,* 10 Ohio St. 53; *Lyle* v. *Rodgers,* 5 Wheat. 394; *McCarthy* v. *Swan,* 145 Mass. 474; *McCormick* v. *Gray,* 13 How. 37; *McGourkey* v. *R. Co.* 146 U. S. 550; *McLeod* v. *New Albany,* 66 Fed. 378; *Moore* v. *Dunn,* 41 Ohio St. 62; Morse, Arbitration & Award; *Neafie* v. *Neafie,* 7 Johns. Ch. 5; *Nelson* v. *Hill,* 5 How. 127; *Nettleton* v. *Gridley,* 21 Conn. 531; *Nesbitt* v. *District of Riverside,* 144 U. S. 610; *Norman* v. *U. S.* 20 App. D. C. 497; *Oliver* v. *Piatt,* 3 How. 333; *Packet Co.* v. *Sickles,* 5 Wall. 592; *Page* v. *Tel. Co.* 2 Fed. 330; Parsons, Contr.; *Paulison* v. *Halsey,* 38 N. J. L. 488; *People* v. *Onondaga Com. Pl.* 1 Wend. 314; *Perry* v. *O'Neil Co.* 78 Ohio St. 223; *Phillips* v. *Negley,* 117 U. S. 665; *Porter* v. *Wagner,* 36 Ohio St. 471; *R. Co.* v. *Ralston,* 41 Ohio St. 573; *Samon's Case,* 5 Rep. 77; *Shawhan* v. *Baker,* 167 Mo. App. 25; *Snodderly* v. *Weaver,* 1 Coldw. 256; *Sohns* v. *Sloteman,* 85 Wis. 113; *Stewart* v. *Ashtabula,* 107 Fed. 861; *Trout* v. *Marvin,* 62 Ohio St. 132; *Union & P. Bank* v. *Memphis,* 189 U. S. 71; *Warner* v. *Godfrey,* 186 U. S. 374; *Ex parte Wright,* 6 Cow. 399; *York & C. R. Co.* v. *Myers,* 18 How. 246.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Two important questions are presented by this appeal: First, Did the arbitration agreement and award discontinue and terminate the present suit? and, second, is the Ohio judgment a bar

to further proceedings in this District touching the validity of the award?

Whether an arbitration agreement and award operates as a discontinuance of pending litigation for which the arbitration is substituted by agreement of the litigants is dependent largely upon the intention of the parties. Where it is agreed that the award shall be filed in the pending suit, the arbitration proceedings merely operate to stay proceedings, and not to discontinue the suit. *Bailey* v. *District of Columbia,* 4 App. D. C. 356. Many courts, both in this country and in England, have held that the mere submission of the matters in litigation to arbitration, though no award is made, operates *ipso facto* to discontinue the suit. *Camp* v. *Root,* 18 Johns. 22; *Draghicevich* v. *Vulicevich,* 76 Cal. 378, 18 Pac. 406; *Larkin* v. *Robbins,* 2 Wend. 505; *Wells* v. *Lain,* 15 Wend. 99; *McNulty* v. *Solley,* 95 N. Y. 242; *Travelers' Ins. Co.* v. *Pierce Engine Co.* 141 Wis. 103, 123 N. W. 643; *Mooers* v. *Allen,* 35 Me. 276, 58 Am. Dec. 700; *Eddings* v. *Gillespie,* 12 Heisk. 548; *Jewell* v. *Blankenship,* 10 Yerg. 439. But this rule is by no means universal. An opposite view has been held by many courts. *Nettleton* v. *Gridley,* 21 Conn. 531, 56 Am. Dec. 378; *Henry* v. *Porter,* 29 Ala. 619; *Lary* v. *Goodnow,* 48 N. H. 170; *Dinsmore* v. *Hanson,* 48 N. H. 413; *Paulison* v. *Halsey,* 38 N. J. L. 488; *Fielding* v. *Westermeier,* 20 La. Ann. 51; *Callanan* v. *Port Huron & N. W. R. Co.* 61 Mich. 15, 27 N. W. 718. Where, however, as in the present case, the submission is followed by an award, and it is agreed that upon the return of the award and compliance therewith by the debtor party the pending suit shall be terminated and dismissed, it is settled law that it operates as a discontinuance of the pending litigation.

The bonds of submission stipulated, among other things, as follows:

"7. The scope of the inquiry leading to a final finding and award shall embrace any claim of any nature either party desires to assert against the other, whether equitable or legal; and may embrace claims based on unnecessary loss and injury to either party, by unjustifiable acts of the other.

"8. The purpose of this agreement, being to take up all claims of each party from the beginning, and make an award on the merits of the case, in doing this the arbitrators shall in nowise be limited or constrained by any interpretation put on the paper of Sept. 5–6, 1902, by either party; but each party can, without limitations, present his claims in regard to said paper, and use in doing so, any evidence in his possession.

"9. Said arbitrators shall make a final finding and award in writing, which shall be absolutely binding on both parties, on all the claims presented, and neither party shall resort to any legal or other proceedings, to defeat or change the final finding and award, or delay or obstruct a final settlement, under said final finding and award, according to the terms agreed upon by said arbitrators, or a majority of them, and each party agrees to perform and abide by said award.

"10. The arbitrators shall determine and direct how the settlement of the debtor party shall be made, when it shall be made, and the manner and time of payment."

"14. As soon as the award of the arbitrators has been made, and the debtor party has complied herewith, said suit now pending shall thereby be terminated and dismissed. Provided that if said award requires the execution by said debtor party of any notes or other papers, said execution and delivery shall be deemed a compliance therewith."

By the terms of the award it was found that defendant owed plaintiff $47,725.33; and that it should be liquidated by conveyance in fee to plaintiff of certain real estate owned jointly by the firm, the legal title to which had been vested in trust in the arbitrators, "as full and complete satisfaction of all indebtedness due him by Charles M. Campbell as of the date of this award, and Charles M. Campbell is hereby released from any and all further liability on any claim set out in 'exhibits C and D.'" These exhibits embraced the claims of each party against the other. The award also provided for the conveyance to plaintiff by the trustees of certain real estate described in the award, and for the disposition of certain promissory notes and corporation stock belonging to the firm. The award like-

wise provided for the conveyance of the property held by the arbitrators in trust to the plaintiff within sixty days after the publication of the award, and further provided that "the said James W. Campbell shall within fifteen (15) days after the publication of this finding and award dismiss the suit in equity now pending in the supreme court of the District of Columbia, said suit being equity No. 25,671, in which he is the complainant and Charles M. Campbell is the defendant."

The record discloses that defendant, in so far as it is within his power, has complied with the terms of the award. The legal title to the real estate, which, by the terms of the award, was to be conveyed to plaintiff, was held by the arbitrators as trustees under the terms of submission. Hence, nothing in fact remained for defendant to do in order to comply with the award in so far as the real estate was concerned. Title had already passed from him to the arbitrators; and, if the arbitrators failed to make conveyance to plaintiff, his right of action is against them, and not against defendant. It may be suggested, however, that, inasmuch as the award required plaintiff to dismiss this suit before the real estate was to be conveyed by the arbitrators, plaintiff is in poor position to complain of the failure of anyone to comply with the conditions of the award. The award also required defendant to assign to plaintiff within sixty days after the award certain notes, amounting to $6,834, and also 200 shares of corporation stock. As to the assignment of the notes and corporation stock, defendant in his plea of the submission and award in bar to the amended and supplemental bill averred that "the said award required this defendant to transfer to plaintiff this defendant's interest in certain securities and stocks set forth in said award, all which the defendant did promptly and within the time required by said award." This averment is nowhere affirmatively or negatively controverted; hence, it must be accepted as true.

Indeed, if defendant had failed to comply with the terms of the award, it is doubtful if the case would be different, since plaintiff averred in one of his amendments to the original bill: "Immediately after learning of the award complainant repudi-

ated it, and has ever since continued to do so. He duly and promptly notified the arbitrators and defendant, Charles M. Campbell, that he would not abide by it, and he has received no benefit therefrom in any manner whatsoever, and has continuously refused to accept any of the property or money awarded to him." In the light of this statement, it would ill become plaintiff in a court of equity to complain of the failure of defendant to comply with the terms of the award.

But it is contended by counsel for plaintiff that defendant waived his right to demand a dismissal of the suit by pleading to the amended and supplemental bill. We are not impressed with this contention. Defendant did not waive his right to demand a dismissal of the suit. The award itself operated as a discontinuance of the suit, and defendant, at the first opportunity, when confronted by the amended and supplemental bill, interposed the following plea in bar: "Wherefore this defendant says that by said submission to arbitration and the award thereon, said plaintiff is forever barred of all right to prosecute this suit, or to recover in anywise against this defendant, and said plaintiff is bound forthwith to dismiss this suit."

The parties voluntarily withdrew their controversy from the consideration of the court, and submitted it to a tribunal of their own creation, stipulating that this award should be final. What, then, was the effect of the submission and award upon the pending suit? It was to remove the cause from the court to the tribunal created by the parties. In the leading case of *Purdy* v. *Delevan,* 1 Caines, 304, which was an action for conspiracy in burning plaintiff's barn, after suit was instituted, the parties agreed to submit the case to the arbitrament of certain arbitrators. After hearing, the arbitrators rendered an award finding against the plaintiff, and ordering "that the said suit should be no further prosecuted, and that the plaintiff should pay to one of the defendants $14 and 68 cents, for his costs and expenses in defending the suit, and attending the arbitration." The question involved the right of plaintiff to further prosecute the pending suit. In the opinion, Justice Kent said: "On this statement of the substance of the submission and award, it ap-

pears to me that the reasonable and common intendment from
the language of the award is a determination of the *merits* of the
cause.   The present cause of action was fully and explicitly
submitted.   The award refers to the bonds of submission, and,
of course, the arbitrators had their eyes fixed on the merits of
the complaint, and the *intent* of the submission.   The award
states that the proofs and allegations of the parties had been
examined and considered; of course, the merits must have been
fully heard.   It then adjudged *that the said suit shall be no
further prosecuted,* and that the plaintiff shall pay the costs.
This award could not have intended merely a cessation of the
suit referred to in the bond and award, with liberty to institute
a fresh suit on the same matter.   This would have rendered the
award altogether useless and absurd.   The bonds had stated
already that the parties had agreed to discontinue the suit.
\*   \*   \*   So, an award that a suit in chancery between the
parties should *be dismissed* was good and final; for it must be
understood that it shall be dismissed and cease forever; that is,
a substantial dismissal and cesser, and not the shadow of one.
*Knight* v. *Burton,* 6 Mod. 232, s. c. 1 Salk. 75.   So, an award
that *all suits between the parties shall cease* is good, for the
meaning is not that the party should give over and begin again,
but that the suit should cease absolutely and forever, so that the
right itself is gone with the remedy.   The same construction
was given to these words in an award, that all suits *which are
prosecuted* by the plaintiff against the defendant shall cease.
*Squire* v. *Grevell,* 6 Mod. 34, 1 Salk. 74, 2 Ld. Raym. 691;
*Strangford* v. *Green,* 2 Mod. 228.   See also *Gray* v. *Gray,*
Cro. Jac. 525." It will be observed that the English courts
from the most ancient times have held that an award providing
for the dismissal of a chancery suit was a bar to further pro-
ceedings in that suit.

In the light of the aforegoing authorities, we entertain no
doubt that the submission and award, and the compliance there-
with by defendant, operated to discontinue the present suit.   It
was error, therefore, to permit plaintiff to file the amended
and supplemental bill.   The original suit was dead, and it was

beyond the power of the court to resurrect it. *Shawhan* v. *Baker,* 167 Mo. App. 25, 150 S. W. 1096.

Plaintiff, though dissatisfied with the award, could not shift back to the pending suit. By the bonds of submission, the parties created a tribunal of their own which supplanted the court in which the proceeding was pending, and it would be a travesty upon justice to permit a party to thus disregard his solemn agreement. It is the policy of the law, as expressed by both English and American courts, to uphold the peaceful, swift, and inexpensive method of terminating litigation by arbitration. "And such amicable actions, so far from being objects of censure, are always approved and encouraged, because they facilitate greatly the administration of justice between the parties." *Lord* v. *Veazie,* 8 How. 251, 12 L. ed. 1067. Or as was said in the case of *Bird* v. *Laycock,* 7 La. Ann. 171: "Such being the authority of amicable compounders, they are to be considered as in a peculiar degree, mediators of peace. When, therefore, parties embroiled in litigation become alarmed at the prospect of its expense, its delays, its many perplexing, wearisome, and irritating incidents, and seek among their friends judges of their own choice, and clothe them with the authority of amicable compounders, they are considered, to use the simple and expressive language of Domat, as saying to such arbitrators, that each party is willing to abate something of what they hope for in justice, and, for the love of peace, to forego a part of their interests; that they prefer the considerations of peace and quiet, to the rigor of justice, which might leave still occasions of strife and contention."

That the award is valid on its face, we entertain no doubt. The submission embraced in the most sweeping language all matters of difference between these brothers. It provided not only for a finding, but that the arbitrators should decide the manner in which the debtor party should liquidate his indebtedness to the other. That they contemplated that the liquidation should be made by conveyance of real estate is evidenced by the fact that the submission required that certain of the partnership real estate should be conveyed by defendant to the arbitrators

in trust to be held by them for satisfaction of the award. The award, under the liberal and reasonable interpretation to which it is entitled, is in every respect in compliance with the sweeping terms of the agreement of submission.

The discontinuance of a pending suit by the submission and award does not determine the validity of the award. That question may be raised in a proper action to show that the award was induced by fraud, or that it is not responsive to the terms of the submission, and, therefore, invalid on its face. *Cunningham* v. *Craig,* 53 Ill. 252. Such an action, however, does not open the doors of the court to the trial and adjudication of the matters submitted to arbitration. They cannot be inquired into so long as the award is in existence. Neither can the award be attacked in the suit which was taken from the court and submitted to arbitration. Of course, there is open to plaintiff the remedy of an independent action to vacate the award on the ground of fraud, providing he can successfully avoid the charge of laches or waiver and the more serious obstacle presented by the Ohio judgment.

The decree is reversed, with costs, and the cause is remanded with directions to dismiss the bill.

*Reversed and remanded.*

A motion by the appellee for a rehearing was denied January 3, 1916. Mr. Justice VAN ORSDEL delivering the opinion of the Court:

Appellee, James W. Campbell, filed a motion for rehearing, seeking alternative relief from the judgment, "1. That the decree be sustained." We have carefully examined the case in the light of appellee's brief in support of his motion, and find no convincing reason advanced which would justify a reversal of our opinion and judgment. Hence this request will be denied.

The second ground for the granting of the motion is for a modification of the judgment to the extent "that the cause be

remanded, with directions to dismiss the supplemental and amended bills without prejudice to the right of appellee (plaintiff) to file within thirty days a new and independent suit to vacate the award, and upon the filing of such suit within such time and its due prosecution, that the cause under the original bill, answer, and issue joined be continued and all subsequent proceedings remain *in statu quo* until the final determination of the new suit." We held the award to be valid on its face. Hence, until set aside in a proper proceeding it has the force of a judgment, and therefore became *res judicata* as to all matters embraced in the submission, which in most sweeping language included all differences between the parties. So long as it stands, it is a bar to any proceeding looking to an accounting between the parties. It was a bar to the amended and supplemental bill and all proceedings under it. To now hold those proceedings *in statu quo,* awaiting the result of an action to vacate the award on the ground of fraud, would be to breathe life into a proceeding conducted in the face of a valid award rendered by a tribunal whose "decision on matters of fact and law is conclusive, and all matters in the award are thenceforth *res judicata,* on the theory that the matter has been adjudged by a tribunal which the parties have agreed to make final, a tribunal of last resort for that controversy." 2 R. C. L. 386. It would be foreign to any proper sense of justice to assume the existence of fraud, totally disregard an award valid on its face, the most solemn decree known to the law, and perpetuate this litigation in defiance of defendant's rights, even if the court possessed that power. The original proceeding was transferred from the court to the arbitration board, the tribunal created by the parties. It left the case in the court subject to be dismissed upon a contingency which happened; and what was done subsequent to the submission and award is a mere nullity, and of no binding force and effect, and not subject to judicial resuscitation.

Had the submission contained no stipulation for dismissal of

the original suit, it might be within the power of the court to hold the proceedings prior to submission and award *in statu quo* to await the result of an action to determine the validity of the award. But even in that instance, the subsequent proceedings would be barred by the pending award. The bonds of submission, however, contained a stipulation for the discontinuance of the pending suit. This was not only a binding but a commendable agreement when the parties were substituting for the court a tribunal of their own. The agreement was carried out by the party upon whom the obligation was imposed, and when executed it operated *ipso facto* to discontinue the suit. If we had the power to hold the proceedings *in statu quo,* the action would hardly be justified in the face of the sealed agreement of the parties.

The motion for rehearing is denied. *Motion denied.*

An application for the issuance of a writ of error to remove the cause to the Supreme Court of the United States was denied January 12, 1916.