Robert L. DAVIS, Appellant,

v.

Jacqueline H. DAVIS, Appellee.

No. 5171.

District of Columbia Court of Appeals.

Argued May 25, 1970.

Decided Aug. 3, 1970.

Roland D. Hartshorn, Springfield, Va., for appellant.

Albert Ginsberg, Silver Springs, Md., with whom Joseph H. Schneider and Herbert D. Horowitz, Silver Springs, Md., were on the brief, for appellee.

Before KERN, GALLAGHER and NEBEKER, Associate Judges.

GALLAGHER, Associate Judge.

This is an appeal from a judgment of absolute divorce, containing an order to pay permanent alimony and child support, granted to appellant-husband on the ground of voluntary separation for one year. It raises the question of whether under the

circumstances here presented the trial court may set aside the provisions of a prior separation agreement and order the payment of alimony and child support on different terms.

The parties were married in Maryland on August 31, 1963, and have one child. Their separation commenced in February 1968, and on March 15, 1968, a separation agreement was reduced to writing and signed. Neither party was advised by counsel regarding the provisions of the agreement, but counsel acting for both reduced their negotiated agreement to writing. It provided for a division of real and personal property, and recited the wife's waiver of permanent alimony and a payment to her of $250.00 a month for one year. Further provision was made for child support in the amount of $150.00 per month until majority, except in the event of the wife's remarriage at which time these payments could be reduced by the husband to $50.00 per month.[1]

Appellant-husband's complaint for absolute divorce recited the provisions of the separation agreement and prayed that it be incorporated in the divorce decree. Appellee-wife's answer admitted the existence of the agreement but alleged that it was void for "overreaching." She counterclaimed for custody of the minor child and maintenance for herself and support for the minor child, both pendente lite and permanently.

At the trial both parties testified as to the circumstances surrounding the execution of the agreement. The husband claimed, and the wife admitted, that she stated at the time that she did not believe in "alimony" and did not believe her husband owed her support after she had "gotten on her feet" after the separation; that

she did not want him to support the child if she remarried, so she thought the reduction in child support would be fair; that she held a college degree in zoology and had worked as a laboratory technician before her marriage; and that she said she intended to get a job. He said she did not complain about the provisions for her support until December 1968, a few months prior to the termination date.

Essentially, appellee-wife testified that her husband had used economic coercion to force her to agree to the terms of the separation agreement. Though he had not given her support during the period after the separation and prior to the signing of the agreement, she admitted that she had supported herself by withdrawing one-half of a joint savings account, amounting to some $1,600.00. When she signed the agreement she knew how much money her husband "took home." She planned to find employment but she has been unable to secure a full-time position. She attended a sculpturing school at the Corcoran Gallery of Art for eight months after the separation. She did not believe in permanent alimony at the time of the agreement. She felt she could establish herself without permanent alimony and believed that she needed to "for [her husband's] sake." In one instance, she admitted that the "pressure" she claimed her husband used was "in [her] own head" and pointed to no actions or words by him on this score. She did not seek independent advice as she "felt" that her husband would not pay for it. Again, she did not claim a refusal by him to afford her an attorney.[2] When asked whether at the time of the separation her husband "was showing good faith and consideration toward" her, she replied that "[w]e had an amazingly civil surface relationship."

1. The agreement as originally typed provided for $300.00 per month maintenance for the wife and $100.00 per month for the child, with the same provision for reduction of child support in the event of the wife's remarriage. At the time of its signing, however, the wife changed

the provisions (in handwriting and initialed) thus reducing maintenance by $50.00 and increasing child support by the same amount.

2. As stated, she had access to $1,600.00 prior to the separation agreement.

The trial court granted an absolute divorce to the husband on the ground of voluntary separation for one year. As to the issue of support the court found, in essence, that the wife's decision to enter into the separation agreement was not intelligent or informed; that it was an unwise and unfair agreement for her to make; and that the clause relating to alimony and support for the wife and minor child was not fair or reasonable. It declared the agreement void in those respects and ordered the husband to pay $250.00 per month permanent alimony to the wife,[3] and $150.00 per month child support until majority. We think the trial court erred as a matter of law in setting aside the agreement and ordering payment on new terms.

In the absence of fraud, duress, concealment, or overreaching, a husband and wife may enter into a valid separation agreement which finally settles all property rights and claims between them, and constitutes a bar to further claim by the wife. Le Bert-Francis v. Le Bert-Francis, D.C. App., 194 A.2d 662, 663 (1963). And see, Rosenbaum v. Rosenbaum, D.C.App., 210 A.2d 5, 7 (1965); Henderson v. Henderson D.C.App., 206 A.2d 267, 270 (1965). The parties should be encouraged to make such agreements as they are in most instances in a better position than a court to determine what is fair and reasonable. *Le Bert-Francis, supra,* 194 A.2d at 664. Separation agreements should be enforced when properly made, Travis v. Travis, D.C.App., 203 A.2d 173, 175 (1964), and the burden of proving the taint of fraud, duress, concealment, or overreaching is on the one who asserts the invalidity. *Le Bert-Francis, supra,* 194 A.2d at 663–664. The court should enforce the agreement unless it is unfair on its face and thus raises a presumption of invalidity. *Le Bert-Francis, supra,* 194 A.2d at 664.

Here the trial court found the agreement to be unfair and unwise to the wife and child. It found no fraud, duress, concealment, or overreaching. The wife did not successfully carry the burden of proving the invalidity of the agreement. In fact, at one point she admitted that the "duress" she was hinting at in her testimony was "in my own head" rather than the product of statements by her husband. It is significant that she admitted that at the time of the agreement she did not believe in permanent alimony. Aside from the virtually even division of their real and personal property and provision for the child support, she thought it fair at the time to receive the $250.00 per month support for one year so as to afford her time to become self-supporting.

It may be that the wife could have secured an agreement more advantageous to her, but that is not a sufficient reason to void it. As we said in *Le Bert-Francis, supra,* 194 A.2d at 664:

> In some instances, of course, a party may enter into an agreement which in retrospect seems foolish or ill-advised, but the same is often said of the marriage itself.

If the law were otherwise, it would shake the foundations of separation agreements.

Since we are directing the reinstatement of the entire separation agreement, including the child support provisions, it might be well to point out that the interest of the child is, within reason, primary to any prior agreement between the parties. Barnett v. Barnett, D.C.App., 243 A.2d 51, 53 (1968). Consequently, the provisions in the agreement for child support are always open to later modification by the court upon a proper showing. D.C. Code 1967, § 11–1141(a) (1). No such circumstances were presented here.

The judgment of the trial court insofar as it orders permanent alimony and child support is reversed, and the case is remanded with instructions to reinstate the separation agreement. That portion of the

---

3. This portion of the order was made reviewable by the court in one year.

judgment granting appellant an absolute divorce is affirmed.

Reversed and remanded in part, and affirmed in part.