ROGERS, Associate Judge:
 

 Appellant appeals the denial of his motion to enforce the parties’ separation agreement and to enjoin his former wife from depriving him and their minor children of the use of the marital home. Consistent with our standard of review of the trial court’s exercise of discretion, we hold that the trial court’s findings are supported by evidence in the record and its interpretation of the parties’ agreement is consistent with the requirements for specific performance of the agreement. Accordingly, we affirm.
 

 I
 

 In April 1981, appellee, Mrs. Spencer, sued for separate maintenance, custody of the three minor children, and child support. Appellant, Mr. Spencer, answered and counterclaimed for divorce and joint custody of the children, sale of jointly owned real properties and division of the proceeds, and a judgment that each party should share equitably in the support of the children. In July 1981, the trial court entered a consent order temporarily resolving the issues of maintenance, child support, custody, visitation rights, and access to certain jointly owned real estate, noting that the parties had agreed “that the present residence of the children [in the marital home] should not be changed at this time....”
 

 When the parties found themselves nearly a year later, after extended discovery, still unable to resolve their disputes, they decided to submit “all factual and legal disputes” to “final and binding” arbitration and mutually selected John W. Karr, Esquire, as the arbitrator. To facilitate the arbitrator’s decision, the parties submitted a written stipulation listing twenty-two ar
 
 *1267
 
 eas of agreement and dispute.
 
 [1]
 
 At a July 9, 1982 conference with the arbitrator, the parties reached agreement on all points (including the division of all real property) except custody, visitation rights of the nonresidential parent, division of certain personal property, and responsibility for legal fees and costs of the arbitration. The arbitrator subsequently conferred separately with the three children.
 

 The arbitration decision and award of August 2, 1982 (arbitration decision), awarded the parties joint ownership of the marital home and joint custody of their children and recited that
 

 [t]he children’s base of operations and principal residence is the [marital home], where they grew up and where they remain communally rooted. Their parents agree that
 
 for the nonce
 
 the children’s primary residential arrangement ought not to be altered.
 

 * * * sjc # #
 

 Everyone agrees that it is important that the children’s lives ought to continue with as little disruption as is possible. Mr. and Mrs. Spencer have agreed therefore that Mrs. Spencer and the children shall be entitled to live in the [marital home] until August, 1992, when [the youngest child] will be 22 years old and will likely have finished her undergraduate education. They agree that this property will be listed for sale
 
 not later than August, 1992,
 
 and will be thereafter sold routinely and without delay and that the net proceeds from the sale will be divided equally between them. Between now and 1992, Mrs. Spencer will make the mortgage and tax payments and will pay all routine maintenance expenses for the house, (emphasis added).
 

 On August 13, 1982, Mr. Spencer was granted a divorce, and at the request of the parties, the arbitration decision was approved and ratified by the court, but was not incorporated or merged in the divorce decree.
 

 On July 15, 1983, Mr. Spencer filed a motion for injunctive relief premised on events which had occurred since the divorce decree. Both parties have remarried, and although Mr. Spencer remains in the Washington Metropolitan Area, living in Northern Virginia, Mrs. Spencer (now Mrs. Monahon) has moved to New Hampshire, where her new husband is domiciled, and spends only about three days every other week at the marital home. After her remarriage, Mrs. Spencer wanted to sell the marital home and receive her share of the proceeds, which she claimed were necessary for her share of support of the children.
 

 Mr. Spencer opposes a forced sale of the marital home because the children have expressed their concern about losing the home, and a sale would jeopardize the children’s welfare. He argues that he should be allowed to become the resident parent and assume all expenses for maintaining the home because maintaining it as the primary home for the children would be consistent with the parties’ express agreement that retaining the home is in the best interest of the children. He contends this is clear from the arbitrator’s decision as
 
 *1268
 
 well as the parties’ agreement, that the only circumstance which has changed is Mrs. Spencer’s decision to vacate the marital home and live outside the District of Columbia, and that this change does not make their agreement regarding the marital home unenforceable. In opposing the motion, Mrs. Spencer argues that she has another home to offer the children and under the arbitration decision she and the three children have discretion as to the continued occupancy of the marital home, and nothing prohibits sale of the property before August 1992.
 

 The trial court found that: (1) Mrs. Spencer has moved to New Hampshire where she has a home with sufficient room for the children and the children have familial ties, (2) two of the three children are now in boarding school “far from the District of Columbia” and the third lives with Mr. Spencer in Virginia, and (3) at the time of the arbitration decision, “it was anticipated that Mrs. Spencer would remain in the District of Columbia for an extended period of time and all parties agreed that the marital home should be maintained for the sake of the children.” Accordingly, the court concluded that since the factual predicate of the arbitration decision has “changed drastically”
 

 [t]here is simply no reason any longer, given the unexpected change in circumstances, to maintain the [marital home] as a ‘family home,’ in which Mr. Spencer would now be entitled to live (albeit he is prepared to pay all the expenses on the home). In addition, Ms. Spencer [sic] would suffer a real economic disadvantage in that such an arrangement would delay substantially her opportunity to liquidate a substantial marital asset [the marital home] and share equally in its net proceeds as the parties have agreed to do. •
 

 The court also ruled that the arbitration decision does not require that the marital home be maintained as the family home until August 1992, and that Mr. Spencer could buy Mrs. Spencer’s one-half interest “if the house continues to retain emotional significance for the children (which the court greatly questions given the fact that the two older children are rarely there) ... and keep it for them.”
 

 II
 

 To determine whether the trial court applied the correct standard in denying appellant’s motion, a threshold question is whether the parties’ pre-divorce dispute about the marital home was resolved by arbitration or by an independent separation agreement. The answer is largely dependent on the intention of the parties.
 
 See Campbell v. Campbell,
 
 44 App.D.C. 142, 143, 148 (1915).
 

 Separation agreements and arbitration are similar to the extent that both reduce court congestion and afford parties an opportunity to settle their disputes without court intervention, with speed, economy, and substantial finality.
 
 See, e.g., Brandon v. Hines,
 
 439 A.2d 496, 509 (D.C.1981) (arbitration);
 
 Davis v. Davis,
 
 268 A.2d 515, 517 (D.C.1970) (separation agreements). However, if arbitration is undertaken, the role of the court in interpreting the arbitration decision may be more limited than it would be were the court interpreting a separation agreement. An arbitration award, unlike a separation agreement, is subject to very limited judicial review.
 
 Sindler v. Batleman,
 
 416 A.2d 238, 242 (D.C.1980); D.C.Code §§ 16-4311-4312 (1981). For example, an ambiguity in an arbitration award would not serve as a basis for a court to vacate or modify the award,
 
 United Steelworkers of America v. Enterprise Wheel & Car Corp.,
 
 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), but an ambiguous separation agreement would be subject to court modification.
 
 Rice v. Rice,
 
 415 A.2d 1378, 1381-82 (D.C.1980). Unlike a separation agreement, there is a statutory limitation on the time within which a party may seek modification or vacation of an arbitration decision. D.C.Code §§ 16-4311-4312.
 

 
 *1269
 
 Parties are free to choose the method for resolving their disputes, but once they seek judicial resolution of their disputes, the court may not delegate its duty in all respects.
 
 See Crutchley v. Crutchley,
 
 306 N.C. 518, 521, 293 S.E.2d 793, 796 (1982);
 
 Rustad v. Rustad,
 
 68 N.C. App. 58, 61, 314 S.E.2d 275, 278 (1984). In the District of Columbia, the court retains jurisdiction over certain aspects of domestic relations disputes notwithstanding the parties’ agreement. Thus, not even all aspects of a valid prelitigation or mid-litigation arbitration decision would be binding and not subject to modification by the court. While a property right can be released by contract,
 
 Alves v. Alves,
 
 262 A.2d 111, 118 (D.C.1970), and arbitration of alimony could be binding and non-modifiable,
 
 Crutchley v. Crutchley, supra,
 
 306 N.C. at 523, 293 S.E.2d at 797, provisions concerning custody and child support would continue to be within the court’s jurisdiction despite prelitigation or mid-litigation arbitration or agreement.
 
 Cooper v. Cooper,
 
 472 A.2d 878, 880 (D.C.1984);
 
 Rice v. Rice, supra,
 
 415 A.2d at 1383; D.C.Code § 16-914 (1981).
 

 In the instant case, after the parties had sought judicial resolution of their dispute, they agreed to submit all unresolved disputes to arbitration and further agreed that the arbitration decision would be binding, but made no provision for post-award review or further action by the arbitrator. The arbitrator fully discussed in his decision the matters on which the parties were able to agree as well as those on which the parties required his assistance. When the parties returned to court for continuation of the divorce proceedings, they asked the court to ratify and approve the arbitration award.
 
 [2]
 
 The court, finding that the award disposed of all matters arising out of the marriage, granted the parties' request.
 

 Before coming into court regarding the instant motion, neither party sought relief from the arbitrator.
 
 [3]
 
 Hence, we conclude that the parties intended future issues with respect to any aspect of the arbitration decision to be resolved by the court.
 

 We hold that where parties voluntarily commence arbitration after seeking court resolution of marital disputes, they may properly use arbitration to resolve outstanding disputes, but once the arbitration decision is confirmed and ratified by the court at the parties’ request without reservation for future arbitration of post-award disputes, the arbitration decision becomes the parties’ separation agreement. As such, it is a contract subject to the principles of contract law,
 
 see Owen v. Owen,
 
 427 A.2d 933, 937 (D.C.1981), and may be, as the facts dictate, interpreted or modified by the court,
 
 Rice v. Rice, supra,
 
 415 A.2d at 1381, 1383, or ordered specifically enforced or performed.
 
 Schmittinger v. Schmittinger,
 
 404 A.2d 967, 969-70 (D.C. 1979);
 
 Doerfler v. Doerfler,
 
 196 A.2d 90, 91 (D.C.1963). To hold otherwise would be contrary to the well-established rule that litigants by their voluntary acts may not oust the court of jurisdiction.
 
 Blumenthal v. Blumenthal,
 
 155 A.2d 525, 526-27 (D.C. 1959).
 

 Ill
 

 This court has held that parties will be bound by their separation agreement in the absence of fraud, duress, concealment or overreaching.
 
 Cooper v. Cooper, supra,
 
 472 A.2d at 880 and eases cited therein. Where the parties act in good faith and their agreement is fair and reasonable, and intended as a final disposition of rights and claims regarding such matters as adult support and property rights, the court will leave the parties to continue
 
 *1270
 
 in their relationship under the agreement.
 
 Alves v. Alves, supra,
 
 262 A.2d at 118. If the parties disagree on the meaning of their agreement, then the court must interpret it according to principles of contract law and the court’s statutory responsibilities.
 
 Owen v. Owen, supra,
 
 427 A.2d at 937-38;
 
 see Rice v. Rice, supra,
 
 415 A.2d at 1380-82. The court must view the provisions of the agreement consistently with the parties’ intent at the time they entered the contract, and, insofar as possible, with all other provisions of the contract.
 
 See Connelly v. Methodist Home,
 
 190 A.2d 550, 551 (D.C.1963). If “the written language of the separation agreement is ‘susceptible of clear and definite understanding,’ ... parol evidence [is inadmissible] to vary the express terms,”
 
 Rice v. Rice, supra,
 
 415 A.2d at 1382 (quoting
 
 Minmar Builders, Inc. v. Beltway Excavators, Inc.,
 
 246 A.2d 784, 786 (D.C.1968)), but parol evidence is admissible to determine what the parties intended when they entered their agreement.
 
 Lewis v. Lewis, 300 A.2d
 
 720, 722 (D.C.1973) (citation omitted). That the parties disagree on the meaning of key terms does not make their agreement ambiguous.
 
 Holland v. Hannan,
 
 456 A.2d 807, 815 (D.C.1983). Moreover, where the trial court has resolved factual disputes regarding a contract between the parties, this court must treat those factual findings as presumptively correct, unless they are clearly erroneous or unsupported by the record.
 
 Edmund J. Flynn Co. v. LaVay,
 
 431 A.2d 543, 546 (D.C.1981); D.C.Code § 17-305(a) (1981).
 

 In this jurisdiction it is also settled “that specific performance will be granted to separation agreements.”
 
 Doerfler v. Doerfler, supra,
 
 196 A.2d at 91.
 
 [4]
 
 The trial court has discretion whether to exercise its equity jurisdiction to grant specific performance.
 
 Flack v. Laster,
 
 417 A.2d 393, 400 (D.C.1980);
 
 Willcher v. Willcher,
 
 294 A.2d 486, 489 (D.C.1972). In exercising that discretion, the court must be guided by the principle that parties who have entered into a separation agreement are bound by it and their agreement should be specifically enforced absent evidence that it would be inequitable to do so.
 
 Doerfler v. Doerfler, supra,
 
 196 A.2d at 91. To determine whether enforcement of a contract would be unconscionable, a court must consider all the circumstances.
 
 Schiff v. Schiff,
 
 116 N.J.Super. 546, 559, 283 A.2d 131, 138 (App.Div.1971),
 
 cert. denied,
 
 60 N.J. 139, 286 A.2d 512 (1972). A far greater showing of changed circumstances must be made to justify court modification of a separation agreement than of court ordered alimony or support.
 
 Cooper v. Cooper, supra,
 
 472 A.2d at 880;
 
 Davis v. Davis,
 
 268 A.2d 515, 517 (D.C.1970). Performance may be ordered, however, which is not identical with that promised in the agreement where justice so requires.
 
 Schiff v. Schiff, supra,
 
 116 N.J.Super. at 560, 283 A.2d at 139.
 

 Both parties claim to seek specific performance of the separation agreement, but view differently the effect of Mrs. Spencer’s move to New Hampshire. Mr. Spencer argues that the principle underlying their intent to retain the marital home was their belief and agreement that its retention would be in the children’s best interests, and that he is ready, willing and able to take steps which are consistent with that principle in order to carry out their agreement. Mrs. Spencer counters that their agreement to retain the marital home was part of a comprehensive separation agreement, which divided the parties’ as
 
 *1271
 
 sets and obligations and was based on the children’s need for a stable home. Since she could not afford to purchase another house and did not anticipate remarrying, she and Mr. Spencer agreed that she and the children could live in the marital home until the youngest child has finished college. Now, however, she has the ability to offer the children an alternative, stable, and complete home in New Hampshire, where both parties’ parents also reside and where, at the time the agreement was entered, the parties contemplated the children would spend part of their summer vacation. She thus contends that relocating to her new home is consistent with the parties’ intent, and that the marital home no longer retains its former significance in the children’s lives, pointing to the fact that two of their three children spend less than one month a year at the marital home and to the absence of testimony by the children about their desire to live in it. She also claims that the cost of maintaining the home adversely affects her ability to share effectively in the support of the children.
 
 [5]
 

 This court has enunciated certain guidelines for determining what kinds of changed circumstances will justify denying a motion for specific performance of a separation agreement. Neither an unfavorable change in economic circumstances nor events which the parties should reasonably have anticipated are defenses to specific performance of a separation agreement.
 
 Cooper v. Cooper, supra,
 
 472 A.2d at 880-81;
 
 Davis v. Davis, supra,
 
 268 A.2d at 516-17;
 
 accord Wife, B.T.L. v. Husband, H.A.L.,
 
 287 A.2d 413, 416 (Del.Ch.1972) (citations omitted),
 
 aff'd,
 
 336 A.2d 216 (1975);
 
 Schiff v. Schiff, supra,
 
 116 N.J.Super. 558, 283 A.2d at 137. When child custody or child support is at issue, modification of the parties’ agreement is permitted if the moving party can show “(1) a change in circumstances which was unforeseen at the time the agreement was entered, and (2) that the change is both substantial and material to the welfare and best interest of the children.”
 
 Cooper v. Cooper, supra,
 
 472 A.2d at 880;
 
 Rice v. Rice, supra,
 
 415 A.2d at 1383. Although neither of these guidelines is directly on point, they are helpful here. The parties’ dispute focuses on the use or disposition of real property, but an ancillary issue is whether the children’s welfare will be affected by a sale of the property. Mrs. Spencer’s claim that the marital home should be sold so she will have sufficient resources for child support is relevant only to the parties’ intent with respect to their overall division of their marital assets in the separation agreement.
 
 [6]
 
 Mr. Spencer’s contention that he, with his new family, should be allowed to move into the marital home and maintain it for the children would, in turn, have to be premised under the changed circumstances guidelines not only on the fact that Mrs. Spencer’s remarriage and move outside the District of Columbia were unforeseen, but that the sale of the marital home was unforeseen and would substantially and materially adversely affect the welfare and best interests of the children.
 

 
 *1272
 
 The trial court focused on the unforeseen circumstance of Mrs. Spencer’s move to New Hampshire and the inequity which would result by delaying her realization of her share of a marital asset if the marital home were to be maintained as contemplated at the time of the separation agreement. Upon review of the record, we hold the trial court’s finding that Mrs. Spencer’s move outside of the Washington, D.C. area was unforeseen at the time of the parties’ separation agreement is supported by the evidence, and that the court properly considered the changes in the children’s lives, as well as the absence of testimony from them, the language of the parties’ separation agreement, and their intent. We find no basis on which to conclude that specific performance of the separation agreement would be unconscionable.
 

 The parties agreed that Mrs. Spencer’s remarriage and relocation of her principal residence to New Hampshire were unforeseen at the time of their divorce. Although they were married in New Hampshire and had relatives there, their principal residence had been in the District of Columbia. On the other hand, they contemplated at the time of their agreement that all the children eventually would be in boarding school and thus at the marital home for only limited periods of time. However, the youngest child’s move to live with her father and the other children’s virtual absence from the marital home appear to have been a direct result of Mrs. Spencer’s move.
 

 The separation agreement provided that the parties have joint custody of their children and continue jointly to own the marital home. The evidence does not establish that the marital home was the benefit the parties intended to confer on the children. Rather, it suggests that the parties wanted to provide as stable a home environment as possible for their children, and in view of Mrs. Spencer’s financial situation, the marital home was the best solution at the time. No evidence suggests that the parties were not providing adequately for their children. The trial court did not find that any of the changed circumstances relied on by Mr. Spencer in opposing the forced sale “substantially and materially” affected the welfare or best interest of the children,
 
 Cooper v. Cooper, supra,
 
 472 A.2d at 880; to the contrary, the trial court’s doubt about the children’s attachment to the marital home is supported by the evidence that as the children grow older they are developing other interests and friends far from the marital home and rarely spend time there.
 

 The trial court could reasonably conclude that the “for the nonce” and “not later than August 1992” language in the separation agreement is more consistent with Mrs. Spencer’s contention that she and the children are entitled, but not required, to live in the marital home until 1992, than with Mr. Spencer’s view that maintaining the marital home for the children until the youngest child reaches adulthood was the reason for using such language. The “for the nonce” language is consistent with the possibility that events might occur which would make it impracticable for Mrs. Spencer to remain in the marital home, and the agreement provides that the home could be sold before August 1992. Thus, the agreement as a whole, as well as the language used in regard to the marital home, is consistent with the possibility of future changes in the parties’ circumstances. It logically follows that when Mrs. Spencer moved, the parties were entitled, pursuant to their separation agreement, to sell the marital home and receive their respective share of the profits. The trial court’s order that the property be sold was consistent with its broad discretion to adjudicate property rights arising from a separation agreement.
 
 Travis v. Benson,
 
 360 A.2d 506, 510 (D.C.1976).
 

 Accordingly, we hold that Mr. Spencer’s willingness to maintain the marital home for the children is an insufficient basis to justify modification of the parties’ agreement to substitute him and his new family for “Mrs. Spencer” as part of the
 
 *1273
 
 unit which was entitled to remain in the marital home. With the exception of Mrs. Spencer’s move to New Hampshire, the changed circumstances are the kind which the parties should have contemplated as possible contingencies at the time of their agreement,
 
 see Davis v. Davis, supra,
 
 268 A.2d at 517, and are compatible with the language of their agreement. Finally, the trial court’s observation that Mr. Spencer could buy Mrs. Spencer’s interest in the marital home if he has concluded that maintaining it remains important to the children was within the range of permissible decisions available to it in the exercise of its discretion.
 
 Johnson v. United States,
 
 398 A.2d 354, 365 (D.C.1979). Accordingly, we find no abuse of discretion by the trial court, and affirm.
 

 [1]
 

 . The parties stipulated that: (1) each party was a resident of the District of Columbia; (2) each party was a fit and proper person to have custody of their three children; (3) the parties jointly owned the marital home in the District of Columbia and a home and acreage in Virginia; (4) Mrs. Spencer was residing in the marital home with the children, ages 16, 14 and 13, the eldest of whom was attending school outside the District of Columbia, and it was "hoped that all of the children [would] attend school outside the District when they reach school age, and then attend college; (5) Mr. Spencer sought joint custody of the children with their primary residence remaining with Mrs. Spencer, while Mrs. Spencer sought sole custody with liberal visitation privileges for Mr. Spencer; (6) Mr. Spencer sought inclusion of a requirement in the arbitrator’s decision and in the divorce decree that the children continue to reside in the District of Columbia until each reaches majority. By letter of June 24, 1982, Mrs. Spencer consented to inclusion of a provision that she would not remove the children's primary residence from the Washington Metropolitan Area before they reached the age of majority, and claimed that she had never thought of any other arrangement.
 

 [2]
 

 . This case is distinguishable from
 
 Campbell v. Campbell, supra,
 
 44 App.D.C. at 151-52, where after filing suit, the parties agreed to arbitration as a means to end the litigation and subsequent to issuance of the award, there was nothing further for the court to do.
 

 [3]
 

 . We do not reach the issue of the role of the court when the arbitration decision approved by the court includes a provision for further review by the arbitrator.
 
 See Bailey v. Timpone, supra,
 
 75 Ill.2d 539, 542-46, 27 Ill.Dec. 785, 787-88, 389 N.E.2d 1193, 1195-96 (1979).
 

 [4]
 

 . A separation agreement is like any other contract and, therefore, to be specifically enforced, it must be:
 

 concluded, certain, unambiguous, mutual, and upon valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation or misapprehension, fraud or mistake ... not an unconscionable or hard bargain; and its performance not oppressive upon the defendant; and finally, it must be capable of specific execution through a decree of this court.
 

 Flack v. Laster, supra,
 
 417 A.2d at 400 (quoting 4 J.N. Pomeroy, A Treatise on Equity Jurisprudence § 1404 5th ed. 1941).
 

 [5]
 

 . As a justification for selling the marital home, Mrs. Spencer also relies on the fact that there has been no decrease in hostility between the parties. Both parties testified that the problems surrounding the marital home which are causing hostility between them would be resolved were Mr. Spencer to use the home as his family residence. On the record before us, the parties’ hostility is insufficient to affect our determination of whether the trial court abused its discretion in ordering specific performance of the agreement regarding the marital home.
 

 [6]
 

 . Mrs. Spencer’s complaint about needing additional resources for child support arises largely because of delays in selling the Virginia property. The separation agreement recites that the parties agreed to a flexible formula for sharing support and provides for the sale of the parties’ Virginia property so Mrs. Spencer would have the necessary resources. The parties agreed to share child support proportionately to the ratio of the annual income to the aggregate gross income of each party. Mr. Spencer has always been the primary provider in the family. Hence, their formula and experience make clear that the continuation of this circumstance after their divorce was not unforeseen.