Narressa R. REYNOLDS, Appellant,

v.

Walter S. REYNOLDS, Appellee.

No. 79–849.

District of Columbia Court of Appeals.

Argued March 31, 1980.

Decided May 15, 1980.

Rehearing Denied June 11, 1980.

---

**536**

Darrel S. Parker, Washington, D.C., for appellant.

Christopher S. Howell, Washington, D.C., for appellee.

Before KERN, NEBEKER and PRYOR, Associate Judges.

PER CURIAM:

The parties to this appeal were married in 1969 and have one child. In February 1978 they executed a detailed Agreement, prepared by the wife's attorney, which provided for: their separation; her custody of their child with right of visitation in the husband; waiver of alimony; his payment to her of a certain amount bimonthly for child support; his conveyance to her of his interest in the marital home and her assumption of maintenance expenses on the house;[1] her right to articles of furniture and other personal property; the division of joint indebtedness; and the freedom of each to choose to obtain a divorce.

The wife, appellant herein, sued for absolute divorce in 1978 on the ground of one year's separation and alleged in her complaint that the husband, appellee, had failed to comply with the provision in the Agreement pursuant to which he had agreed to convey to her his interest in the marital home.[2] At trial the husband testified that his only two purposes in entering into the Agreement were (1) he believed that by agreeing to its terms, he was making a conciliatory gesture to his wife that would ultimately lead to their reconciliation; and (2) that by disposing of his interest in their home (and its concomitant mortgage burden) he would be able to obtain VA financing with which he could purchase another house where he could live during their separation.

1. The Agreement provides in relevant part:

The parties' home at 723 Somerset Place, N.W., the husband agrees, the wife shall have sole title. As soon as possible, the husband will quitclaim, release and transfer to the wife all of his right, title, and interest in the said Washington, D.C. home. Thereafter, the wife agrees to pay all expenses in connection with the maintenance of said home and any subsequent transfer of it by the wife, shall indemnify and hold the husband harmless from any such payments and expenses.

2. The husband has never given up occupancy of the marital home and the wife and child have lived elsewhere.

The record reflects that appellee was successful in achieving his second purpose: he purchased a condominium with a VA loan and ultimately recognized a $7,000 profit upon its resale when he was unable to keep up his payments. He was unsuccessful as to his first purpose in entering into the Agreement, since the wife later sued for divorce and the trial court awarded her an absolute divorce. The court also awarded her custody and child support in the same manner as provided by the terms of the Agreement.[3]

The conscientious trial judge, however, determined the Agreement to be invalid because it was without consideration and the subject of a "misunderstood purpose," and ordered the marital home divided equally between the parties. Thus, it may be seen that on appeal the validity *vel non* of the Agreement affects only the ownership of the marital home, since the trial court's decision in all other respects comported with what the parties agreed to. If the Agreement is valid and enforceable then the home goes entirely to the wife; on the other hand, if the Agreement is void, as the trial court concluded, each party has an equal interest in the home.[4]

The husband vigorously argues to this court that the trial court's voiding of the Agreement is amply supported by the following facts: (1) he executed it without benefit of advice from counsel and without waiving in writing his right to an attorney; (2) at the time he affixed his signature to the Agreement he refused even to read through it because he was angry at his wife; and (3) there was no consideration flowing to him from the Agreement.

■ This jurisdiction encourages the parties in any marital dispute to resolve by agreement their joint marital interests. In the absence of fraud, duress, concealment or overreaching, an agreement is valid and binding no matter how ill-advised a party may have been in executing it. *Lanahan v. Nevius*, D.C.App., 317 A.2d 521, 523 (1974); *Davis v. Davis*, D.C.App., 268 A.2d 515, 517 (1970); *Le Bert-Francis v. Le Bert-Francis*, D.C.App., 194 A.2d 662, 664 (1962). The instant case appears to be a prime example of this principle since the husband does not allege that he was forced or entrapped into executing the Agreement, however foolishly he may have acted by affixing his signature without reading the Agreement in its entirety and consulting his attorney. (The record does reflect, however, that the husband was advised to seek counsel and was generally familiar with the contents of the Agreement, having drawn up a "check list" of items to be covered.)

■ As to lack of consideration to support the validity of the Agreement, we note that the husband obtained from it the following benefits: (1) relief from any obligation to pay alimony to his wife of ten years; (2) relief from his obligation to pay the mortgage on the marital house and, as a direct consequence, the acquisition of a VA loan with which he ultimately realized a profit on the purchase and sale of another house; and (3) the securing of a house as a place where his daughter, who was ill, could be cared for.[5]

■ Finally, we are constrained to conclude that the trial court's conclusion the Agreement is unenforceable because of a "misunderstood purpose" is clearly erroneous. Accepting the husband's testimony that his purpose in entering into the Agreement was to obtain a VA loan and ultimately to effect a reconciliation with his wife,

---

3. The court also awarded the wife the furniture and other personal property in the home.

4. The court's initial order of May 11, 1979, provided that both parties had the right to purchase the interest of the other, if agreeable. By later order, the trial court, upon the election by the husband to purchase appellant's interest in the home, ordered an appraisal and subsequent purchase and sale between the parties.

5. The presence of these advantages accruing to the husband would preclude the voiding of the Agreement here on the ground it was unfair and unreasonable on its face. *See Davis v. Davis, supra* at 517; *Cooper v. Cooper*, D.C. Mun.App., 35 A.2d 921, 923 (1944).

rather than to settle their property interests, the fact remains that the Agreement he signed before a notary provided for a number of obligations and rights on his part and expressly allowed each party to proceed to obtain a divorce.[6] In the absence of evidence that he was so afflicted by emotional distress as to impair his mental capacity and therefore not know what he was undertaking when he executed the Agreement, we cannot approve the court voiding it when it is valid on its face. *See Jacobson v. Jacobson*, D.C.App., 277 A.2d 280 (1971).

Accordingly, the trial court's order is reversed and the case remanded for further proceedings consistent with this opinion.

*So ordered.*

6. The Agreement provided, among others, that the "parties hereafter shall live separate and apart from each other," and its "provisions . . . shall not be construed to prevent either party from suing for an absolute or limited divorce in any competent jurisdiction upon such grounds as he or she shall elect or as he or she may be advised."