Emmett J. RICE, Appellant,

v.

Lois RICE, Appellee.

No. 79–237.

District of Columbia Court of Appeals.

Argued Aug. 9, 1979.

Decided May 30, 1980.

---

Michael Evan Jaffe, Washington, D.C., with whom Kathleen A. McGinn, Wash-

# 1380

ington, D.C., was on the briefs, for appellant.

Ronald L. Goldfarb, Washington, D.C., with whom Ronald A. Schechter, Washington, D.C., was on the brief, for appellee.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

KELLY, Associate Judge:

Appellant husband seeks review of the trial court's order modifying the visitation provisions of a separation agreement that had been incorporated into the divorce decree. We reverse.

Appellee wife (now Mrs. Fitt) brought an action to enforce and modify the divorce decree entered sixteen months earlier, contending that the separation agreement was ambiguous. She urged that the agreement be reformed to reflect the actual intent of the parties to have the children spend fifty percent of their time with her. Alternatively, she argued that a change in circumstances and the best interests of the children required the court to modify the original agreement.

▆▆▆ The trial court "adopt[ed] the legal position set forth by the plaintiff"[1] and ordered that "the children . . . spend alternating months of the school year with each parent. . . ." It expressed no conclusions regarding the agreement's ambiguity and made no findings of fact concerning changed circumstances.

The father argues on appeal that the original separation agreement was not ambiguous and therefore needed no reformation, that there was no significant change in circumstances requiring modification of the agreement, and that the court's order effectively created a "split custody" arrangement which is disfavored in this jurisdiction. *Utley v. Utley*, D.C.App., 364 A.2d 1167, 1170 (1976).[2] He also argues that the trial judge failed to make sufficient "written findings of fact and separate conclusions of law" as required under Super.Ct. Dom.Rel.R. 52(a).

Our agreement with appellant's position that the trial court violated Rule 52(a) would normally necessitate a remand for further findings of fact. However, having searched but found in the extensive record no set of facts (*i. e.*, no change in circumstances) that could support the court's final order modifying the divorce decree, remand

---

1. The confusion in plaintiff's legal argument must, therefore, be ascribed to the trial court. Not only does it seem to assign error to the trial court that granted the original divorce decree, it erroneously cites 24 Am.Jur.2d *Divorce and Separation* § 803 (1966), as authority for the proposition that any discretion over visitation privileges invalidates the entire visitation arrangement. *See Willey v. Willey*, 253 Iowa 1294, 115 N.W.2d 833, 838 (1962). Furthermore, it misapplies *McGehee v. Maxfield*, D.C.App., 256 A.2d 576 (1969), which held only that (parol) evidence regarding the intent of the parties is admissible to explain what meaning both parties meant to give to an *ambiguous* contract term. Parol evidence is admissible only to explain ambiguous contract terms or to invalidate a contract on grounds of fraud, duress or mutual mistake. *Minmar Builders, Inc. v. Beltway Excavators, Inc.*, D.C.App., 246 A.2d 784, 786 (1968) (citations omitted). The "terms of an agreement are *not rendered ambiguous* by the mere fact that the parties do not agree upon their proper construction." *Sundown, Inc. v. Canal Square Associates*, D.C.App., 390

A.2d 421, 432 (1978) (citations omitted). *See infra* at II.

2. *Utley*, in dictum, restated the familiar proposition that

Generally, divided custody of a child of tender years is not favored. Perhaps the reason for this is that an orderly, meaningful, and reasonably secure family life is crucial during the formative years of a child's life. A happy and normal family life is often impossible of accomplishment when a child of tender years is subjected to the frustrating experience of divided custody especially when in the process he is shifted from home to home, from city to city, or from one family environment to another. [*Utley v. Utley, supra* at 1170 (citations omitted).]

We need not decide the applicability of *Utley* to this case, since our reversal of the trial court's decision rests on other grounds. In any event, the father's continuing "custody" of the children was never directly challenged by the court or by the parties.

would be futile.[3] We thus reverse the trial court's decision as a clear abuse of discretion and reinstate the decree.[4]

## I

The record shows that the parties were married in 1962. A daughter was born in 1964, and a son in 1966. The parties separated in 1975, executed a separation agreement on January 31, 1976, and were divorced by a decree entered on May 16, 1977, that incorporated the earlier separation agreement. The agreement gave legal custody of the two children to the husband and set forth the wife's visitation rights as follows:

3. Each party states that he or she wishes to have the custody of the minor children of the parties. In compromise of these conflicting desires, the parties agree that the Husband shall have custody of the minor children of the parties, with the right reserved to the Wife to have the children, or either of them, with her at reasonable times and places so long as the exercise of such visitation rights does not unduly interfere with prior plans of or for the children. Without in any way derogating the rights the duties of the Husband as legal custodian of both children, the principal place of abode of Susan E. Rice shall be considered to be with the Wife.

4. The parties recognize that it is not practicable to formulate specific provisions as to all of the time which the children will spend with the Wife pursuant to the foregoing paragraph. On approximately a monthly basis, the parties will review their commitments and obligations, and the commitments and obligations of the children, and will agree upon the visitation schedule for the children for the forthcoming period, keeping in mind the children's need for continuity and other needs and interests. Without

limiting the scope of the Wife's rights under the foregoing paragraph, nor the obligation of the parties under the preceding sentence of this paragraph, the parties agree that the Wife shall have the children with her from Friday after school until Monday morning on alternate weekends, and for one-half of all school holiday periods and of the summer vacation. Without being legally bound, the Husband represents that it is his expectation that the children will spend time with the Wife in addition to the specific periods provided, including one or more overnight visits during the school week, subject always to the best interests and welfare of the children.

The parties concede, and the trial court found, that at the time of this action, "the children spen[t] every other weekend with [appellee], as well as one-half of the vacations." Appellee introduced charts at trial, prepared from her daily calendars, showing that during the period between entry of the decree and her filing of this action her visitation time with the children changed only once, dropping from an average of thirty-eight percent before her remarriage to thirty-six percent afterwards. (This excludes the 1977 summer vacation period when her visitation time was set at fifty percent under the separation agreement.)

## II

■ Our first inquiry is whether any allegedly ambiguous term or terms in the parties' separation agreement required the trial court's interpretation, or whether the entire agreement was so ambiguous that the agreed upon visitation arrangement required modification.

Appellee alleges that the term "reasonable times and places" in Section 3 of the agreement is inadequately defined, and that the phrase "without limiting the scope," (referring to her additional visitation rights

---

3. *See Utley v. Utley, supra* at 1170.

4. The trial court's modification order was stayed by this court pending appeal.

beyond those specifically provided in Section 4) is also unclear. She apparently also alleges that appellant's failure to agree with her upon visitation scheduling on "a monthly basis" constituted a breach of the agreement. She claims that the agreement's ambiguity permits the introduction of extrinsic (parol) evidence to demonstrate her contention that the parties intended a 50/50 visitation arrangement.

Appellant argues that these are merely boiler-plate terms and that the agreement clearly sets forth the parties' responsibilities and rights.

We find this separation agreement clear and understandable,[5] despite the flexibility and discretion it grants to appellant. As we construe it, visitation above the specified minimum is left to the appellant's discretion: he may refuse to allow any additional visitation that "unduly interferes" with the children's plans or he may, alternatively, choose to allow additional visitation "[w]ithout [however] being legally bound" to do so. The constraint on his discretion is self-evident and inherent in his duties and responsibilities as custodian; thus his actions are "subject always to the best interests and welfare of the children."

The rationale for such a flexible and discretionary visitation arrangement, which we understand is not an unusual one, is set forth in the agreement, which states that "the parties recognize that it is not practical to formulate specific provisions" regarding visitation.

Had the wife desired to convert the husband's "expectation," that visitation beyond the stated minimum would be granted, into a mandatory obligation, she had every opportunity to do so.[6] She chose not to. Instead, she subscribed to the merger clause's presumption that the "agreement contains the entire understanding of the parties" and agreed that the parties would "not be bound by any representations, warranties, promises, covenants or understandings other than those expressly set forth. . . ." Furthermore, she acknowledged, by signing the separation agreement, that she "fully [understood] everything set forth . . . that [she] sought and obtained independent legal advice . . . and [was] fully informed of all legal rights and liabilities . . . [and] believe[d] the agreement to be fair, just and reasonable. . . ."

■ Because the written language of the separation agreement is "susceptible of a clear and definite understanding," *Minmar Builders, Inc. v. Beltway Excavators, Inc.*, D.C.App., 246 A.2d 784, 786 (1968), and neither fraud, duress, nor mistake is alleged, the trial court's admission of parol evidence to vary the express terms of the integrated agreement was erroneous. "If this were permitted, [agreements] would not be worth the paper on which they are written." *Tonn v. Philco Corp.*, D.C.App., 241 A.2d 442, 445 (1968) (citations omitted). Absent a finding of fact that the agreement was ambiguous or executed through fraud, duress or mistake, the court's modification of the agreement to conform to extrinsic evidence of the parties' intent is an abuse of discretion. *See Reynolds v. Reynolds*, D.C. App., 415 A.2d 535 at 537 (1980).

### III

Appellee alternatively argues that changed circumstances—apparently, appellant's reduction of her visitation time—mandated judicial modification of the original divorce decree.

Appellant contends that there was no material change in circumstances other than appellee's dissatisfaction with the agree-

---

5. We note that there is no reference anywhere in the agreement to a fifty percent allocation of visitation time with appellee.

6. Appellee's attorney was allowed to testify that he advised his client to sign the separation agreement in reliance on appellant's alleged oral "assurance" that appellee would be allowed fifty percent visitation rights, despite the fact that the agreement itself did not reflect that supposed understanding.

ment and her feeling that she is stigmatized by anything short of 50/50 visitation rights. He also notes that the children's best interests were never harmed by the visitation agreement and that no expert testimony regarding their well-being was before the court.[7]

■ Although it is indisputable that the courts have continuing jurisdiction to modify custody arrangements in the best interests of the children, *Alves v. Alves,* D.C.App., 262 A.2d 111, 117–18, 51 A.L.R.3d 213 (1970) (citing *Demonet v. Burkart,* 23 App.D.C. 308 (1904)), it is equally beyond dispute that the modification must be based upon changed circumstances which occurred after the divorce decree was entered and were not contemplated by the parties at the time. *McGehee v. Maxfield,* D.C.App., 256 A.2d 576, 578–79 (1969); *Dawn v. Dawn,* 90 U.S.App.D.C. 226, 228, 194 F.2d 895, 897 (1952). *See* Clark, Law of Domestic Relations § 17.7, at 597 *et seq.* (1968).

■ Any change justifying amendment of the decree must be both substantial and material to the child's welfare and best interests. *Dawn v. Dawn, supra* at 228, 194 F.2d at 897. Actions for modification must not be used as procedural devices for reviewing the equities of the prior decree. *Hamilton v. Hamilton,* D.C.App., 247 A.2d 421, 423 (1968) (citing 27B C.J.S. *Divorce* § 322(2), at 695 (1959)).

■ Thus, the burden of proof that the changes alleged are material is placed upon the party seeking modification. *Tennyson v. Tennyson,* D.C.App., 381 A.2d 264, 266 (1977) (citing *Hamilton v. Hamilton, supra* at 42). Clark, *supra* at 600, explains the rationale for this rule:

[C]ourts are aware of [the] danger [that children will be disturbed by changes in custody] and are generally reluctant to modify existing custody arrangements. . . . The only cure for [the] evil [of prolonged custody battles] is continued careful scrutiny of each case at the trial court level, coupled with the imposition of a heavy burden of persuasion upon the party asking for the modification.

■ Appellee did not meet her burden of proof. The only change since the entry of the decree that was alleged was a minimal reduction in visitation well within the range contemplated by the decree.

Furthermore, even had she, *arguendo,* sustained her burden, the particular modification of the decree chosen by the trial court would have to be set aside as inadequately supported by the findings (or the record).

■ Although the specific modification of a divorce decree chosen by the court is within the court's discretion, it must be supported by the findings and rationally related to the changed circumstance it purports to counter. That is, the modification must be reasonably calculated to promote the child's best interest and welfare, which is the "controlling consideration." *Utley v. Utley, supra* at 1170. *See Coles v. Coles,* D.C.App., 204 A.2d 330, 331 (1964).

■ The trial court here made no findings of fact which indicate that this 50/50 visitation arrangement is justified, other than a general assertion, under the heading "Factual Background," that "[b]oth parties agree that there exists a need for greater certainty as far as the ability to schedule the children's (and their own) activities."[8]

The court's recognition of a need for certainty does not mandate that it order any

---

7. The children requested and were granted permission not to appear before or be interrogated by the court. As appellee's brief states, "Neither party called expert witnesses to testify concerning the best interest of the children."

8. Later in the order, this "Factual Background" is referred to as the "Findings of Fact" and the

court makes "Conclusions of Law" based on these "findings," including the same assertion that "there exists a need for greater certainty regarding [their] schedules." In addition to ordering an alternating month visitation schedule, the court orders "that neither parent shall do anything in any way which would hinder the

one outcome; it merely requires *some* resolution to the problem presented. In our estimation, sustaining the validity of the original agreement between the parties would accomplish the same purpose.

Since there is no indication in the record, and no finding by the trial court, that the children's interests were adversely affected, either by the original visitation agreement or by the alleged change in circumstances, amounting to a slight reduction in appellee's visitation time, and, furthermore, there is no evidence to support the trial court's conclusion that a 50/50 division of the children's time was calculated to serve their best interests, appellee did not meet her burden of proof and the trial court abused its discretion in granting her relief.

IV

This court has held, in *McGehee v. Maxfield, supra,* that a change reasonably contemplated by the parties when the agreement was made (as was the appellant's discretion to grant additional visitation here) does not warrant a modification of the agreement (there, an express transfer of custody), if the existing arrangement is not proven to be other than in the best interest of the children. *Id.* at 578–79.

Having concluded that the parties' separation agreement was not ambiguous and that appellee failed to show a material subsequent change in circumstances justifying the modification of the decree ordered by the trial court, we reverse the court's order and reinstate the separation agreement as incorporated into the parties' divorce decree.

*So ordered.*

HARRIS, Associate Judge, dissenting:

I respectfully dissent. To permit a proper understanding of this case, it seems necessary to quote in full the trial court's order

love of the children for the other parent." There are absolutely no findings in "Factual

of January 22, 1979, which today is rejected by the majority. That order reads as follows:

ORDER

This matter came before the Court on the plaintiff's motion to enforce and modify the divorce decree, to which defendant offered opposition. The matter was presented in detail on January 12, 16 and 17, 1979 and taken under advisement by the Court, which now issues this Order based upon the record of this case and the testimony, documentary evidence, and arguments presented at the hearing.

FACTUAL BACKGROUND

1. The parties were married in New York City on November 4, 1962.

2. Two children were born of this marriage: Susan E., born November 17, 1974 and Emmett J., Jr., born September 1, 1966.

3. The parties separated on June 15, 1975 and plaintiff moved to 3110 Garfield Street on or about September 25, 1975; they were divorced in the District of Columbia May 15, 1977.

4. Prior to the divorce a Separation Agreement was signed by the parties on January 31, 1976, interpretation of sections three and four of which is the subject matter of this hearing.

5. Plaintiff was married to Alfred Fitt in the District of Columbia on January 7, 1978.

6. Defendant is a Senior Vice President of the National Bank of Washington and resides at 1673 Myrtle Street, N.W., Washington, D.C.

7. Plaintiff is Vice President of the Washington office of the College Entrance Examination Board and resides at 3110 Garfield Street, N.W., Washington D.C.

8. Legal custody of the children is in the defendant and is undisputed.

Background" or elsewhere in the order even remotely relevant to this part of the order.

9. Present visitation is as follows: The children spend every other weekend with the plaintiff, as well as one-half of the vacations, a program the continuation of which is urged by the defendant. Plaintiff seeks an additional award of visitation which would allow the children to spend one-half of the "school time" with her.

10. It seems clear that both parents love their children and are concerned with their schooling, maintenance, and upbringing.

11. By letter, the children have each indicated a desire not to be consulted by the attorneys or the Court or to be forced to choose sides, a request which is honored by the Court.

12. This Court has continuing jurisdiction of this matter, *Alves v. Alves*, 262 A.2d 111 (D.C.App.1970).

## THE AGREEMENT

The Agreement entered into by the parties on January 31, 1976 consists of nineteen (19) pages, the disputed portions of which are found in paragraphs 3 and 4 which read as follows:

"3. Each party states that he or she wishes to have the custody of the minor children of the parties. In compromise of these conflicting desires, the parties agree that the Husband shall have custody of the minor children of the parties, with the right reserved to the Wife to have the children, or either of them, with her at reasonable times and places so long as the exercise of such visitation rights does not unduly interfere with prior plans of or for the children. Without in any way derogating the rights and duties of the Husband as legal custodian of both children, the principal place of abode of Susan E. Rice shall be considered to be with the Wife.

4. The parties recognize that it is not practicable to formulate specific provisions as to all of the time which the children will spend with the Wife pursuant to the foregoing paragraph. On approximately a monthly basis, the parties will review their commitments and obligations, and the commitments and obligations of the children, and will agree upon the visiting schedule for the children for the forthcoming period, keeping in mind the children's need for continuity and other needs and interests. Without limiting the scope of the Wife's rights under the foregoing paragraph, nor the obligation of the parties under the preceding sentence of this paragraph, the parties agree that the Wife shall have the children with her from Friday after school until Monday morning on alternate weekends, and for one-half of all school holiday periods and of the summer vacation. Without being legally bound, the Husband represents that it is his expectation that the children will spend time with the Wife in addition to the specific periods provided, including one or more overnight visits during the school week, subject always to the best interests and welfare of the children."

*Plaintiff's* position regarding these sections is that they are not specific and that they contain ambiguities such as (children are to be with Wife) "at reasonable times and places so long as the exercise of such visitation rights does not unduly interfere with prior plans of or for the children". Paragraph 3. "The parties recognize that it is not practicable to formulate specific provisions as to all of the time which the children will spend with the Wife pursuant to the foregoing paragraph". Paragraph 4. (Visitation periods are allotted to the Wife) . . . "without limiting the scope of the Wife's rights" (to have the children with her at reasonable times).

She presented testimony by way of parol evidence that she had received assurances from the defendant that he would allow the children to spend one-half of their time not otherwise spelled out with the plaintiff, as had in fact been done during the time of separation prior to the Agreement, *i. e.*, approximately eighteen months. (A graph

of the time division was presented as plaintiff's exhibit # 5). Plaintiff admits that the language of paragraphs 3 and 4 does not on its face refer to such a division of visitation, but urges that a less than 50/50 visitation implies a stigma against her, which defendant denies.

*Defendant's* position is that the language of these disputed sections is indeed clear and should be binding. He calls attention to the fact that this Agreement, and particularly these disputed sections, was the result of long and arduous negotiations between the parties and their lawyers, as well as well-meaning friends and counsellors. He urges that the document speaks for itself and suggests that this action is an attempt by the plaintiff to re-negotiate a matter that has already been settled.

Both parties agree that there exists a need for greater certainty as far as the ability to schedule the children's (and their own) activities.

Of overriding importance in this matter is, of course, consideration of the best interests of the children despite whatever feelings of acrimony may have existed and/or presently exist, between the parties.

## PLAINTIFF'S LEGAL ARGUMENT

Plaintiff cites the following cases and hornbook law to support her argument that the Court should enlarge visitation:

1. The Court may consider prior or contemporaneous negotiations to explain the contract term, see *Simpson on Contracts* § 101, as well as the conduct of the parties in order to determine what the parties intended the terms to mean, *McGehee v. Maxfield*, 256 A.2d 576 (D.C.App.1969).

2. The Court may amend the decree if a party can show that "circumstances and conditions have so changed that the best interests of the child would be served by amending the custody order", *Dawn v. Dawn*, 90 U.S.App.D.C. 226, 194 F.2d 895 (1952); *McGean v. McGean*, 339 A.2d 384 (D.C.App.1975); *Hamilton v. Hamilton*, 247 A.2d 421 (D.C.App.1968).

3. "[T]he courts have the power to, and should, specify the visitation rights in detail . . . [I]t is error to order that the right of visitation shall be at the discretion of the person having custody of the child . . .". 24 Am.Jur.2d *Divorce and Separation* § 803.

4. The plaintiff urges that this case is distinguished from the case of *Utley v. Utley*, 364 A.2d 1167 (D.C.App.1976) in that *Utley* deals with the concept of divided custody—among other matters—and the plaintiff herein is not disputing custody in the defendant. Also, that the children here are not those of "tender years", being 14 and 12 years old, as opposed to the three year old involved in *Utley*.

## DEFENDANT'S LEGAL ARGUMENT

Defendant denies that paragraphs 3 and 4 of the Agreement are in any way ambiguous, or that they require any interpretation by the Court. Further, that the divorce judgment entered May 15, 1977 found as a fact that the Agreement "fully resolved all . . . matters relating to . . . custody" between the parties, concluding as a matter of law that the Agreement shall be ratified and approved by the court and incorporated by reference into the judgment.

Defendant indicates that the plaintiff is actually urging split custody of the children and that such would not be in the best interests of the children. Further, that *Utley v. Utley, supra,* holds, in part, that "generally, divided custody of a child of tender years is not favored."

\*    \*    \*    \*    \*    \*

Based on the above, and reiterating the Findings of Fact set forth in the section entitled "Factual Background" of this Order, this Court makes the following Conclusions of Law:

1. That custody and visitation are separate and distinct concerns and custody in the defendant remains unchallenged.

2. That the best interests of the children requires that a modification of the divorce

decree be effected to reflect a 50/50 division of the children's school time, the Court hereby adopting the legal position set forth by the plaintiff.

3. There exists a need for greater certainty regarding the children's schedules.

Therefore, the Court does this 22nd day of January, 1979, Order as follows:

1. That the children shall spend alternating months of the school year with each parent, commencing on February 1, 1979 with the defendant.

2. That weekend visits within the month shall continue to be alternating and to cover the period of Friday after school until Monday morning.

3. That the summer vacation period is to remain equally divided as provided in paragraph 4, with whichever party having the children when school is concluded retaining them for the balance of that month and then alternating. Likewise, the parent having the children during the month school commences, shall retain them for the balance of that month, then alternating.

4. That the parents shall abide by the requirement that they review the children's (and their own) commitments and obligations, and this is to be done during the week preceding the monthly change-over.

5. That neither parent shall do anything in any way which would hinder the love of the children for the other parent.

6. That all the other terms and conditions of the Agreement of January 31, 1976 are hereby ratified and confirmed.

7. Each party shall be responsible for their respective attorney's fees.

> /s/ George Herbert Goodrich
> GEORGE HERBERT GOODRICH
> Judge

It is, of course, well established that the trial court's determination of a custody question is "subject to reversal only for clear abuse of discretion." *Moore v. Moore*, D.C.App., 391 A.2d 762, 770 (1978). Part of my disagreement with the majority stems from its finding a high degree of precision in the separation agreement's provisions as to visitation; those provisions strike me as unclear.[1] Consistent with its finding of precision in the agreement, the majority unwarrantedly applies strict contract law principles, subordinating the concept that "it is without question now that in any child custody case the controlling consideration is the best interest and welfare of the child." *Utley v. Utley*, D.C.App., 364 A.2d 1167, 1170 (1976), and cases there cited.

The majority concludes that the trial court "violated" Domestic Relations Rule 52(a), which provides in part:

> In all actions tried upon the facts the court shall make written findings of fact, separate conclusions of law and judgment. . . .

One other provision of Rule 52(a) is not referred to by the majority but is, in my view, relevant. The rule also states:

> If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. * * *

Assuredly perfection is not an achievable goal in written orders of the trial court, any more than it is for those of us who function at the appellate level. It is true that the trial judge did not state definitively whether his disposition was predicated upon ambiguity in the separation agreement or upon changed circumstances (or, as is likely, on both). However, I have no trouble concluding that his carefully written findings and conclusions collectively pass muster. Assuming arguendo that they do not, however, the appropriate remedy is a remand for further consideration of the case, rather than a blanket rejection of the record bases for the action taken. *See, e. g., Moore v.*

---

1. For example, while the father has custody of both children, paragraph 3 of the agreement specifies that "the principal place of abode of [the daughter] shall be considered to be with the Wife."

Moore, supra, at 770; O'Meara v. O'Meara, D.C.App., 355 A.2d 561, 563 (1976).

I could understand the majority's disagreeing with the trial court's resolution of the visitation controversy. However, it is not our function to reverse based upon mere disagreement; "we have no right to substitute our judgment for that of the trial court." In re Lem, D.C.Mun.App., 164 A.2d 345, 350 (1960). Both parents are employed and are financially able to care for the children. Each parent lives near the other and near the children's schools. Both parents love and desire the company of their children. The children informed the court that they love both of their parents and did not wish to have to choose between their parents.[2] Since neither child is "of tender years" and the distance between the two homes is minimal, the arrangement decided upon by the trial court not only seems to me to be well within the exercise of its discretion, but moreover obviously would result in a higher degree of stability and certainty in the lives of the children than they previously have been able to enjoy. Cf. Utley v. Utley, supra (divided custody not favored where three-year-old child was to be transported 1,800 miles every third month). I find no "clear abuse of discretion" by the trial court, and accordingly respectfully dissent.[3]

---

2. Each child wrote a sensitive, thoughtful letter to the trial court, asking not to be forced to testify or be consulted as to the custody dispute. The son, however, noted in his letter: "I just want to see my mother and my father on an equal basis."

3. When the father appealed, he sought a stay of the trial court's ruling. A stay was granted, by chance by the two judges who comprise the present majority.