Donald **FOSTER–GROSS**, Appellant,

v.

Oralia **PUENTE**, Appellee.

No. 92–FM–1091.

District of Columbia Court of Appeals.

Argued Nov. 3, 1993.

Decided March 30, 1995.

---

Stephen A. Zorn, with whom Jean G. Zorn and Ellen D. Pattin, were on the brief, White Plains, NY, for appellant.

Theresa M. Mihalik, Washington, DC, for appellee.

Before WAGNER, Chief Judge,* and FERREN, Associate Judge, and KERN, Senior Judge.**

WAGNER, Chief Judge:

Appellant, Donald Foster–Gross, seeks review of two orders of the trial court modifying custody and child support provisions of the parties' separation agreement, which was incorporated, but not merged into their divorce decree.  Foster–Gross argues that the trial court erred in failing to make written findings of fact and separate conclusions of law as required by Super.Ct.Dom.Rel.R. 52(a) (1994).  He also argues for reversal on the following grounds:  (1) the trial court ordered a change of residential custody without any showing of a substantial and material change of circumstances affecting the best interest of the children which was unforeseeable at the time that the parties entered the agreement;  (2) the trial court predicated its order for child support on the invalid custody order;  (3) even assuming the validity of the modified custody provision, the court erred in applying the Child Support Guideline;  and (4) the support order was entered without providing appellant adequate notice and an opportunity to present evidence.  We conclude that the trial court's failure to make written findings of fact and conclusions of law for both orders as well as its application

---

* *Judge* WAGNER was an *Associate Judge* of this court at the time of argument.  Her status changed to *Chief Judge* on June 14, 1994.

** Former *Chief Judge* ROGERS was a member of the division that heard oral argument.  After her departure from the court, *Senior Judge* KERN was selected by lot to replace her.

of an improper standard in determining a change of custody require reversal and remand for further proceedings consistent with this opinion.

## I.

Appellee, Oralia Puente, filed a motion to modify custodial/residential arrangements for the parties' minor children. She requested that the parties' separation agreement be modified because of an alleged change in circumstances, substantial and material to the best interest of the children, which was unforeseen at the time of the making of the agreement. Foster–Gross opposed the motion.

The parties were granted an absolute divorce on October 24, 1989. They are the parents of two minor children, Joaquin, born February 27, 1977, and Sarah, born August 6, 1984. Prior to the divorce, the parties entered a voluntary separation and property settlement agreement which resolved all issues of custody, support, property rights and other claims arising out of their marriage.[1] The agreement was incorporated, but not merged, into the divorce decree. The agreement provided for the parties to share joint legal custody of the minor children and for the children to reside with each parent for equal periods of time. The parties agreed to the following provisions for the support of the children:

> As long as the parties' salaries are comparable, each parent shall be solely responsible for providing the minor children with food, shelter, utilities and transportation while they are living with that parent.

\*    \*    \*    \*    \*    \*

For purposes of this Agreement, the parties agree that their salaries are compa-

rable if their gross incomes from employment do not vary by more than $20,000. Provided, however, salaries shall not be deemed comparable if one spouse's income from employment involuntarily decreases to less than $30,000 because of illness, reduction in force, or other circumstances beyond his or her control.

The agreement further provided for modification under the following described circumstances:

> In the event the parties' gross incomes are not comparable, there is a substantial change in the financial circumstances of one party, or one party has an overseas assignment or moves from the area, they agree to renegotiate child support pursuant to the provisions in Paragraph VI.9 herein.[2]

Foster–Gross was a career U.S. Foreign Service officer at the time the parties executed the agreement. They anticipated that he would be assigned to duty overseas. Therefore, the parties included in the agreement a provision for the children's residence in that event. In that connection, the agreement provided:

> Commencing in the summer of 1992, if [Foster–Gross] is already posted overseas or scheduled for an overseas post in the fall of 1992, the parties agree on the following living arrangements for Joaquin and Sarah; provided, however, for the children to live at any overseas post with [appellant] as provided below, the post must not be politically or medically dangerous (that there be a "sanitary" hospital or facility in the city of posting) and whenever appropriate for Joaquin or Sarah the post must have an accredited (by U.S. standards) high school.[3]

1. The parties also entered into a supplemental agreement to the separation agreement on October 23, 1989. Both the separation agreement and its supplement were incorporated, but not merged, into the decree.

2. Paragraph VI.9 provides:
   The parties recognize that disagreements may arise between them in the future, and they agree to settle these without court action to the fullest extent that may be permissible. If the parties cannot resolve a controversy as to the modification, interpretation or alleged breach

of this Agreement, they agree to first attempt to resolve the controversy in mediation with a mutually agreed upon mediator and to share equally the costs of the mediation. In the event they are unable to resolve the controversy through mediation, then either party may apply to a court of competent jurisdiction for resolution of the issue.

3. The provisions with respect to the childrens' living arrangements are as follows:
   (a) Joaquin and Sarah shall spend June and July of 1992 with [appellee], and August with

In a letter dated November 22; 1991, Foster–Gross informed Puente that he would not be posted overseas until after the summer of 1993. However, some six months later, on May 22, 1992, Foster–Gross formally informed Puente that he had been assigned to an overseas post in Swaziland and that he intended to take the children with him in August of that year. Prior to that time, Puente had on May 6, 1992, sent Foster–Gross a letter requesting that they meet with a family therapist to discuss the "needs and stability of the children." Puente indicated that she had a therapist in mind, but she was open to other suggestions. She also stated that she did not want to take the matter to court. Foster–Gross declined to participate.

Because both children had expressed a desire not to move to Swaziland, and believing that Sarah had special needs, Puente sent another letter to Foster–Gross on May 31, 1992, proposing that they have the children seen by a Dr. Kathryne Jacobs for evaluation and a determination of whether the proposed move was in the children's best interest. Although Foster–Gross objected, Puente had the children seen by Dr. Jacobs. According to Puente, she notified appellant that Dr. Jacobs found it to be in the best interest of the children to remain in the United States with Puente. When Puente received no response, she filed this action.

Following a hearing on the merits, including an *in camera* interview with the parties' children, the trial court entered an order modifying the custody arrangements on August 14, 1992. The court granted Puente's motion and provided that the parties' minor children would reside with her full time until further order of the court. The court also scheduled a child support hearing for August 20, 1992, based on Puente's request for child support, since the minor children would be living with her. On or about August 18, 1992, Foster–Gross requested a continuance of the child support hearing for an indefinite time since he had already left the United States. The trial court denied the request, and Foster–Gross did not appear for the scheduled hearing. In an order dated August 24, 1992, the trial court ordered Foster–Gross to contribute to the support of the children pursuant to the Child Support Guideline in the amount of $1,650 per month.

## II.

■ Foster–Gross argues that the trial court failed to make adequate written findings of fact and conclusions of law in the orders modifying the support and custody provisions of the agreement as required by Rule 52(a). Super.Ct.Dom.Rel.R. 52(a). Rule 52(a) provides, in pertinent part, that "[i]n all actions tried upon the facts the Court shall make written findings of fact, separate conclusions of law and judgment...." *Id.* The rule further provides that such "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except motions to modify an order of the Court...." *Id.* Puente argues that since there had been no prior court order or determination regarding custody and support, Rule 52(a) does not apply to the motion to modify the custodial and residential arrangements and child support provisions of the separation agreement. She contends that her motion sought only to modify the parties' agreement and not an order of the court.

■ Rule 52(a) applies to the issues addressed in this case by its terms and under the case law interpreting the rule. The rule requires written findings of fact and conclu-

[appellant;] (b) Joaquin and Sarah shall spend the 1992–93 school year overseas with [appellant;] (c) Joaquin and Sarah shall spend the first half of their 1993 summer vacation with [appellant] and the second half with [appellee;] (d) Sarah shall spend her 1993–94 school year with [appellee;] (e) Joaquin and Sarah shall spend the first half of their 1994 summer vacation with [appellee] and the second half with [appellant;] (f) Sarah shall spend her 1994–95 school year with [appellant;] (g) Joaquin and Sarah shall spend the first half of the 1995 summer vacation with [appellant] and the second half with [appellee;] (h) The parties agree that Joaquin's feelings about where he wishes to complete his junior (1993–94) and senior (1994–95) years of high school shall be given substantial weight and that he shall be primarily responsible in deciding whether he will complete high school at [appellant's] posting or return to the United States. Joaquin will consult with both parents together concerning this decision in the summer of 1993 after he has completed his sophomore year in high school.

sions in cases involving custody and support. *Moore v. Moore,* 391 A.2d 762, 771 (D.C. 1978); *Smith v. Smith,* 344 A.2d 221, 223 (D.C.1975); *Sheridan v. Sheridan,* 267 A.2d 343, 345 (D.C.1970). It is the nature of the issues which requires such particularized findings.[4] One purpose of Rule 52(a) is to assure that litigated facts and issues are detailed sufficiently to effectuate the doctrine of finality. *Tennyson v. Tennyson,* 381 A.2d 264, 267 (D.C.1977). Thus, when the grounds for modification are a change of circumstances, those circumstances must be set out in detail "not only to support the modification, but to prevent the relitigation of facts and issues in the future." *Id.* (citations omitted). When alimony and support are at issue, the trier of fact will generally be required to make findings of fact sufficient to "demonstrate that all elements material to the amount of the award were given full consideration and the manner in which the facts in dispute were resolved." *Kieffer v. Kieffer,* 348 A.2d 887, 890 (D.C.1975). In determining a motion to modify or reduce a child support order, the trial court must make written findings of fact and conclusions of law for all material issues. *Smith, supra,* 344 A.2d at 223. The rule serves the goal of assuring that the issues in such cases are resolved based upon the evidence, and not extralegal considerations. *Id.* (citing *O'Lea v. O'Lea,* 138 A.2d 486, 487 (D.C.1958)).

Here, the trial court made no written findings of fact and conclusions of law in its order of August 14, 1992, modifying custody. The court's brief order states, as the basis for modifying the parties' agreement and ordering the children's residence to remain with the mother until further order of the court, that "it is in the minor children's best interest to remain in the United States as set forth in this Court's oral findings made on the record, in open-court on July 31, 1992." Appellee argues that the trial court's oral findings and conclusions, stenographically recorded, are the functional equivalent of formal written findings and will fulfill the requirements of the rule. We disagree. The official comment to the rule makes clear that the rule was modified to delete a prior provi-

sion which allowed such findings to be made orally and reported stenographically. R.52(a) comment. The comment also states explicitly that written findings of fact and conclusions of law are required for "motions to increase or reduce alimony, maintenance or support as well as motions to change custody." *Id.* Here, the oral statements are inadequate to fulfill the requirements of the rule and to allow for meaningful review. *See Utley v. Utley,* 364 A.2d 1167, 1170 (D.C. 1976); *see also Sheridan, supra,* 267 A.2d at 347. When "a trial court fails to document its findings and conclusions, [the court] must remand for that purpose." *Plumley v. Plumley,* 465 A.2d 393, 394 (D.C.1983); *Moore, supra,* 391 A.2d at 770; *Wood v. Wood,* 360 A.2d 488, 490 (D.C.1976).

### III.

■ Appellant argues that the trial court abused its discretion by ordering a change of residential custody when there was no evidence of an unforeseen change in circumstances which was substantial and material to the children's best interest. Since it appears that the trial court did not apply the correct legal standard in addressing this issue and the case must be remanded, we address it briefly. When custody arrangements have been determined by the parties' voluntary separation agreement, which has been incorporated but not merged into the divorce decree, the court can modify the provisions only if it finds (1) that there has been a change in circumstances which was not foreseen at the time the agreement was entered, and (2) that the change is both substantial and material to the welfare and best interest of the children. *Rice v. Rice,* 415 A.2d 1378, 1383 (D.C.1980); *see also Cooper v. Cooper,* 472 A.2d 878 (D.C.1984). The trial court found that there were changed circumstances, but it could not find that those circumstances were unforeseen. The court stated:

It is very difficult for me to honestly reach a conclusion that these changed circumstances were not anticipated at the time of the divorce decree. Indeed the agreement

---

4. The rule requiring findings of fact and conclusions of law applies whether modification is sought of a court order or a separation agreement.

itself reflects that the parties anticipated that Mr. Foster–Gross would have a posting in a foreign country at some time in the vicinity of 1991 to 1993. And indeed the agreement reflects that they planned for that eventuality.

It appears that the trial court then abandoned the standard set forth in *Rice,* and employed a "best interest of the child" analysis, considering the factors set forth in D.C.Code § 16–911(a) (1989). The court seemed to be of the view that unless the parties had considered the statutory factors imposed upon a court in determining a child's best interest, it owed no deference to the parents' initial custody agreement.[5] This is simply not the law. The standard set forth in *Rice* and *Cooper* proceeds on the assumption that the children's best interests were a paramount consideration when the parents made the agreement. *Cooper,* 472 A.2d at 880. "If, thereafter, the best interests of the children are threatened in a material way by circumstances unforeseen at the time of the agreement it is reasonable for a court to entertain a request for modification of either custody or support provisions." *Id.* Therefore, upon remand, the trial court must apply the *Rice/Cooper* test in its analysis.

## IV.

The trial court modified the support order based upon a change of the children's residence to the mother, applying the Child Support Guideline. D.C.Code § 16–916.1 (1989). Under the modified order, the children would no longer be spending equal time with each parent. The Child Support Guideline, which outlines a formula for determining child support, generally applies presumptively where one parent is principal custodian. *See* D.C.Code § 16–916.1(b)(8). However, where a child spends at least 40% of the time with each parent, the guideline becomes merely

advisory. *See id.* § 16–916.1(n). Since the support order is predicated on the modified custody order which must be vacated, the support order should be vacated also. Moreover, the support order itself did not comport fully with the requirements of Rule 52(a).

For the foregoing reasons, the orders appealed from are hereby vacated, and the case is remanded to the trial court for further proceedings consistent with this opinion.[6]

*So ordered.*

---

5. In that connection, the court stated the following:

[I]f this agreement had reflected [the factors in § 911–a as well,] "the Court might have a good deal of difficulty in overturning it. But I think not only does the agreement not reflect those things, but I think the parties have even acknowledged that they didn't consider all of those factors.... [W]here I am confronted

with an agreement that was not entered into by the parties with deference to and consideration of these statutory criteria, I don't don't think that that agreement can trump a decision of this court based upon those factors particularly where there has been a significant change in circumstances."

6. In view of the disposition we reach, we do not reach the other issues raised by appellant.